961 A.2d 96

Edward M. MAZUR; Jeffrey W. Bull; and an Unincorporated Association Citizens Against Tax Incremental Financing, Appellants

v.

TRINITY AREA SCHOOL DISTRICT; Trinity School Board; and Emily Minor; Jerry Chambers; Charles McCreary; Stephanie Komorowski; Kathy Penkowski; Dennis McWreath, Appellees.

Edward M. Mazur; Jeffrey W. Bull; and an Unincorporated Association Citizens Against Tax Incremental Financing, Appellants

v.

Washington County; Washington County Board of Commissioners; Commissioner Bracken Burns and Commissioner Larry Maggi, Appellees.

Edward M. Mazur; Jeffrey W. Bull; and an Unincorporated Association Citizens Against Tax Incremental Financing, Appellants

v.

South Strabane Township; South Strabane Township Board of Supervisors; Anthony Zelenka; Charles Kosey and Billy Bell, as Supervisors, Appellees.

Nos. 1—6 WAP 2008.

Supreme Court of Pennsylvania.

Argued Sept. 8, 2008.

Decided Dec. 17, 2008.

Jody L. Rosenberg, Esq., Peter M. Suwak, Esq., Law Office of Peter M. Suwak, for Edward M. Mazur, Jeffrey Bull and Citizens Against TIF (1 WAP 2008).

Robert J. Grimm, Esq., Swartz Campbell, L.L.C., Pittsburgh, for Washington County (1 WAP 2008).

Michael Louis Brungo, Esq., Maiello, Brungo & Maiello, L.L.P., Pittsburgh, for Trinity Area School District (1 WAP 2008).

Thomas Alec Lonich, Esq., McCloskey & Fritsch, P.C., Washington, PA, for South Strabane Township (1 WAP 2008).

Falco A. Muscante, Esq., Maiello, Brungo & Maiello, L.L.P., Pittsburgh, for Trinity School Board (1 WAP 2008).

Dusty Elias Kirk, Esq., Pepper Hamilton, L.L.P., Pittsburgh, for amicus curiae Tanger Properties Limited Partnership (1 WAP 2008).

Jody L. Rosenberg, Esq., Peter M. Suwak, Esq., Law Office of Peter M. Suwak, for Edward M. Mazur, Jeffrey Bull and Citizens Against TIF (2 WAP 2008).

Michael Brungo, Esq., Pittsburgh, for Trinity School Board (2 WAP 2008).

Dusty Elias Kirk, Esq., Pepper Hamilton, L.L.P., Pittsburgh, for Tanger Properties Limited Partnership (2 WAP 2008).

Jody L. Rosenberg, Esq., Peter M. Suwak, Esq., Law Office of Peter M. Suwak, for Edward M. Mazur, Jeffrey Bull and Citizens Against TIF (3 WAP 2008).

Robert J. Grimm, Esq., Swartz Campbell, L.L.C., Pittsburgh, for Washington County (3 WAP 2008).

Dusty Elias Kirk, Esq., Pepper Hamilton, L.L.P., Pittsburgh, for Tanger Properties Limited Partnership, (3 WAP 2008).

Jody L. Rosenberg, Esq., Peter M Suwak, Esq., Law Office of Peter M. Suwak, for Edward M. Mazur, Jeffrey Bull and Citizens Against TIF (4 WAP 2008).

Robert J. Grimm, Esq., Swartz Campbell, L.L.C., Pittsburgh, for Washington County (4 WAP 2008).

Dusty Elias Kirk, Esq., Pepper Hamilton, L.L.P., Pittsburgh, for Tanger Properties Limited Partnership (4 WAP 2008).

Jody L. Rosenberg, Esq., Peter M. Suwak, Esq., Law Office of Peter M. Suwak, for Edward M. Mazur, Jeffrey Bull and Citizens Against TIF (5 WAP 2008).

Thomas Alec Lonich, Esq., McCloskey & Fritsch, P.C., Washington, PA, for South Strabane Township (5 WAP 2008).

Dusty Elias Kirk, Esq., Pepper Hamilton, L.L.P., Pittsburgh, for Tanger Properties Limited Partnership (5 WAP 2008).

Jody L. Rosenberg, Esq., Peter M. Suwak, Esq., Law Office of Peter M. Suwak, for Edward M. Mazur, Jeffrey Bull and Citizens Against TIF (6 WAP 2008).

Thomas Alec Lonich, Esq., McCloskey & Fritsch, P.C., Washington, PA, for South Strabane Township (6 WAP 2008).

Dusty Elias Kirk, Esq., Pepper Hamilton, L.L.P., Pittsburgh, for amicus curiae Tanger Properties Limited Partnerhsip (6 WAP 2008).

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## *OPINION*

Justice McCAFFERY.

The issue presented in the instant case is whether courts have subject matter jurisdiction over a challenge to a local authority's determination, pursuant to the Tax Increment Financing Act ("TIF Act"),[1] that an area is "blighted." In addition, we are asked to determine whether the instant allegations of bad faith on the part of the local authority are sufficient to withstand preliminary objections in the nature of a demurrer.

Appellants, who are two private individuals (Edward M. Mazur and Jeffrey W. Bull) and a citizens' group (Citizens Against Tax Incremental Financing), have challenged the use of tax increment financing ("TIF") for a commercial development project known as Victory Centre located in South Strabane Township ("the Township").[2] TIF is "a technique used by a municipality to finance commercial developments usually involving issuing bonds to finance land acquisition and other up-front costs, and then using the additional property taxes generated from the new development to service the debt." *Ondek v. Allegheny County Council,* 860 A.2d 644, 645 n. 2 (Pa.Cmwlth.2004) (quoting Black's Law Dictionary (8th ed.2004)).

1. Act of July 11, 1990, P.L. 465, *as amended,* 53 P.S. §§ 6930.1–6930.13.

2. Notably, this is **not** an eminent domain case. Appellants have no property interest in the tract of land at issue.

Pursuant to the terms of the Victory Centre TIF proposal, the total estimated cost of the project was $400 million, of which 93% was to be privately financed, and the remaining 7% was to be financed via the TIF mechanism, with a payback term of 20 years. The Victory Centre project included retail stores, restaurants, and a hotel on a mostly undeveloped site near the intersection of two interstate highways. Appellees, who are three local taxing entities (the Township, Washington County, and the Trinity Area School District) and the board members, commissioners, or supervisors thereof, each voted to participate in the TIF project. As required by statute, public hearings were held prior to the votes, and the Township determined that the site in question was a "blighted" area. *See* 53 P.S. §§ 6930.5(a)(5) and 6930.5(a)(6)(iv)(H). Also as required by statute, in October 2005, the Township, as the relevant municipal authority, enacted an ordinance to create the TIF district and to adopt the TIF project plan. *See* 53 P.S. § 6930.5(a)(6).

Appellants filed six suits against Appellees in the Washington County Court of Common Pleas. In three of the actions, Appellants appealed the decisions of the local taxing entities to adopt the TIF proposal; and in the other three actions, Appellants filed complaints in equity. In all six actions, Appellants sought the same form of relief, *i.e.*, to set aside the taxing entities' decisions to approve and/or to participate in the TIF proposal. The grounds for all the actions were the same. Specifically, Appellants alleged that the decisions of the local governing entities with respect to the TIF plan for Victory Centre were wasteful of taxpayer dollars and that the determination of blight was factually incorrect; in addition, Appellants alleged that Appellees had acted in bad faith with respect to the determination of blight.[3]

Appellees filed preliminary objections seeking to have all the actions dismissed for lack of subject matter jurisdiction or

3. As pointed out by the Commonwealth Court, although Appellants challenged the designation of blight in their complaints against each of the Appellees, this claim could properly be raised only against the Township and its Board of Supervisors, because they were the actors

for failure to state a cause of action. The trial court consolidated all six actions, held that the court did not have subject matter jurisdiction, and accordingly sustained Appellees' preliminary objections; it then dismissed all the complaints.

Appellants appealed to the Commonwealth Court, which affirmed, concluding that, in essence, Appellants were challenging the merits and wisdom of legislative enactments, a matter over which the judiciary does not have jurisdiction. *Mazur v. Trinity Area School District*, 926 A.2d 1260, 1266–67 (Pa.Cmwlth.2007) (*en banc*). More specifically, the Commonwealth Court cited *Ondek, supra,* for the proposition that a TIF resolution is a purely legislative enactment, not an adjudication, and accordingly the Local Agency Law, which allows aggrieved persons to appeal an agency *adjudication*, does not provide Appellants with a vehicle upon which to base their appeal.[4] *Mazur, supra* at 1265. In addition, the Commonwealth Court held that it did not have jurisdiction over Appellants' claims for equitable relief, citing the United States Supreme Court for the proposition that "[t]he judiciary may not sit as a super[-]legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed[ ] along suspect lines." *Id.* at 1266 (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)). Concluding that Appellants' conclusory allegations were nothing more than an attack on the wisdom of the taxing districts' legislative enactments, the Commonwealth Court upheld the trial court's dismissal of all complaints based on lack of subject matter jurisdiction. *Id.* at 1268.[5]

which had declared the area blighted in the resolution that formally created the TIF district. *Mazur v. Trinity Area School District*, 926 A.2d 1260, 1269 n. 11 (Pa.Cmwlth.2007) (*en banc*).

4. The Local Agency Law, 2 Pa.C.S. §§ 551–55 and 751–54, provides, in relevant part, that "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals ...." 2 Pa.C.S. § 752.

5. Judge Pellegrini, joined by Judges McGinley and Smith–Ribner, dissented. Although the dissent conceded that pursuant to *Ondek v.*

240

Appellants then filed a petition for allowance of appeal to this Court, which we granted, limited to the following two issues:

(1) Whether the Court has jurisdiction to review municipal decisions approving a TIF District supported by public funds?

(2) Whether [Appellants'] allegations that [Appellees] made findings of blight in bad faith[ ] are sufficient to withstand a demurrer?

Our standard and scope of review concerning questions of subject matter jurisdiction are well-established:

Jurisdiction over the subject matter is conferred solely by the Constitution and laws of the Commonwealth. The test for whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs. Thus, as a pure question of law, the standard of review in determining whether a court has subject matter jurisdiction is *de novo* and the scope of review is plenary. Whether a court has subject matter jurisdiction over an action is a fundamental issue of law which may be raised at any time in the course of the proceedings, including by a reviewing court *sua sponte*.

*In re Administrative Order No. 1–MD–2003; Appeal of Troutman,* 594 Pa. 346, 936 A.2d 1, 5 (2007).

When an appellate court rules on whether preliminary objections in the nature of a demurrer were properly sustained, the standard of review is *de novo* and the scope of review is plenary. *Luke v. Cataldi,* 593 Pa. 461, 932 A.2d 45, 49 n. 3 (2007). The court may sustain preliminary objections only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief. *Hospital & Healthsystem Association of Pennsylvania v. Department of*

*Allegheny County Council,* 860 A.2d 644 (Pa.Cmwlth.2004), Appellants were precluded from bringing a challenge under the Local Agency Law, the dissent would have held that Appellants could have raised their challenge in equity. *Mazur, supra* at 1271 (Pellegrini, J., dissenting).

*Public Welfare,* 585 Pa. 106, 888 A.2d 601, 607 n. 12 (2005). For the purpose of evaluating the legal sufficiency of the challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. *Id.; Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 702 A.2d 850, 853 (1997).

In 1990, in response to concerns about the continued existence of blighted urban areas in the Commonwealth, the General Assembly enacted the TIF Act, which authorized the use of TIF. *See* 53 P.S. §§ 6930.2(a)(1) and (a)(2). As the TIF Act states, "[t]he authorization of tax increment financing will provide an alternative method for use by authorities in pursuing redevelopment efforts under the Urban Redevelopment Law [6] and other applicable laws." 53 P.S. § 6930.2(a)(3). The TIF Act's expressly stated purpose is "to provide an additional and alternative means to finance public facilities and residential, commercial and industrial development and revitalization, all to the public benefit and good." 53 P.S. § 6930.2(b).

The TIF Act sets forth, *inter alia,* the following steps that must be followed in order to employ this financing mechanism. The governing body of a municipality must propose the creation of a "tax increment district," which is a contiguous geographic area within a redevelopment area, and the adoption of a "project plan" for development of the district. 53 P.S. §§ 6930.3 and 6930.5. The governing body must hold "at least one public hearing at which interested parties are afforded a reasonable opportunity to express their views on the concept of tax increment financing, on the proposed creation of a tax increment district and its proposed boundaries, on the proposed adoption of a project plan for the district and the benefits to the municipality." 53 P.S. § 6930.5(a)(5). In order to create the tax increment district and adopt the project plan, the governing body must enact a resolution or ordinance to

6. Act of May 24, 1945, P.L. 991, 35 P.S. §§ 1701–19.2. The Urban Redevelopment Law preceded the TIF Act by 45 years, and as mentioned in the text, *supra,* the TIF Act was designed to function in concert with the Urban Redevelopment Law. *See* 53 P.S. § 6930.2(a)(3).

that effect. 53 P.S. § 6930.5(a)(6). The resolution or ordinance must, *inter alia*, contain findings that the proposed tax increment district is a "blighted" area containing characteristics of blight as described in the Urban Redevelopment Law. 53 P.S. § 6930.5(a)(6)(iv)(H).

The Commonwealth Court has previously addressed challenges to adoption of a TIF resolution or ordinance. In *Ondek, supra,* the appellants, in their capacity as taxpayers and residents, challenged the adoption of a TIF resolution, enacted by the Allegheny County Council, to authorize the use of TIF for a commercial project known as Mt. Nebo Pointe. The *Ondek* appellants appealed under the Local Agency Law, which provides, in relevant part, that "[a]ny person aggrieved by an **adjudication** of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals or pursuant to Title 42." 2 Pa.C.S. § 752 (emphasis added). "Adjudication" is defined in this context as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa.C.S. § 101.

The Commonwealth Court held that the TIF resolution authorizing Mt. Nebo Pointe was not an adjudication, but rather was a legislative act intended to spur local development. *Ondek, supra* at 649. The court further explained its holding as follows:

> The land development and financing scheme created by the [Mt. Nebo Pointe] Resolution affects the interests of all of the residents of Allegheny County, particularly those who pay real estate taxes on properties within the TIF district. Indeed, a tax resolution is a prime example of an "agency action" that necessarily affects the interest of the public in general and not just those individual citizens who decide to mount a legal challenge to such a resolution.

*Id.*

Thus, because the TIF resolution was deemed to be a purely legislative enactment and not an adjudication, the

Commonwealth Court held that the trial court did not have jurisdiction to hear a challenge to that resolution pursuant to the Local Agency Law, and accordingly ordered the appeal to be dismissed. *Id.* at 649.

In *Mercurio v. Allegheny County Redevelopment Authority*, 839 A.2d 1196 (Pa.Cmwlth.2003) (*en banc* ), the appellants filed a complaint for declaratory judgment and in equity seeking to enjoin another TIF project. Like the instant Appellants, the *Mercurio* appellants contended, *inter alia*, that the TIF district at issue was not blighted. *Id.* at 1198, 1203–04. Noting that there were no allegations of bad faith or fraud on the part of any governmental entity, the *Mercurio* court concluded that the determination of blight was not subject to judicial review. *Id.* at 1203–04. The *Mercurio* court emphasized that the essence of the appellants' suit was their disagreement with the local authority's enactments creating the TIF district, and reiterated that the judiciary did not have jurisdiction to rule on the wisdom of legislative enactments. *Id.* at 1203.

In the *Mercurio* decision, the Commonwealth Court relied on this Court's holding in *Schenck v. City of Pittsburgh*, 364 Pa. 31, 70 A.2d 612 (1950), an eminent domain case involving the Urban Redevelopment Law. Like the TIF Act, the Urban Redevelopment Law requires that an area to be redeveloped under the statute be declared blighted. 35 P.S. § 1712.1; *see In re Condemnation by the Urban Redevelopment Authority of Pittsburgh*, 527 Pa. 550, 594 A.2d 1375, 1376 (1991). The appellant-property owner in *Schenck* sought an injunction against the City of Pittsburgh with respect to the redevelopment of a tract of land within which the appellant's property was located. This Court refused to grant appellant an injunction, holding that "in the absence of any indication that the [City Planning] Commission did not act in good faith or was wholly arbitrary in certifying the area designated by it as blighted, its certification to that effect is not subject to judicial review." *Schenck, supra* at 614; *see St. Peter's Roman Catholic Parish v. Urban Redevelopment Authority of Pittsburgh*, 394 Pa. 194, 146 A.2d 724, 726 (1958) ("[I]t is generally settled that unless bad faith, arbitrary action, or failure to

follow a statutory requirement [is] shown, the certification by
an Authority that an area is blighted and the plan for improv-
ing it are not subject to judicial review."); *see also In re
Condemnation by the Urban Redevelopment Authority of
Pittsburgh, supra* at 1378 (1991) (expressing the view that "a
certification of blight does not, in and of itself, have a *legal*
effect on property rights") (emphasis in original).

We addressed further the role of the judiciary in a challenge
to a local authority's determination of blight pursuant to the
Urban Redevelopment Law in *Crawford v. Redevelopment
Authority of the County of Fayette,* 418 Pa. 549, 211 A.2d 866
(1965). In *Crawford,* the plaintiff-appellee brought an action
in equity to enjoin the redevelopment authority from taking
her property via eminent domain pursuant to a redevelopment
plan. The plaintiff-appellee contended, *inter alia,* that the
redevelopment authority had acted arbitrarily in including her
property within the tract of land characterized as blighted and
subject to redevelopment. Following a hearing, the trial court
found in favor of plaintiff-appellee; held that, contrary to the
redevelopment authority's determination, her property was
not blighted; and accordingly forbade the taking of her prop-
erty.

This Court reversed, noting first that the Urban Redevelop-
ment Law gave to the local urban redevelopment authority the
power to declare a property blighted and to exercise eminent
domain as to the blighted property. *Id.* at 868; *see* 35 P.S.
§§ 1709(i) and 1712.1(a). We made clear that "the courts have
no right to substitute their discretion in place of the legisla-
tively granted discretion of the [local redevelopment] Authori-
ty." *Crawford, supra* at 868. The decision whether to exer-
cise the power is justified in a given instance rests with the
redevelopment authority—not with the courts. However, we
further held that judicial review is proper when it is alleged
that the redevelopment authority acted in bad faith or arbi-
trarily, failed to follow a statutory requirement, or violated a
constitutional provision. *Id.*

The power of discretion over what areas are to be consid-
ered blighted is solely within the power of the [local]

Authority. The only function of the courts in this matter is to see that the Authority has acted not in bad faith; to see that the Authority has not acted arbitrarily; to see that the Authority has followed the statutory procedures in making its determination; and finally, to see that the actions of the Authority do not violate any of our constitutional safeguards.

*Id.*[7]

The holdings in *Crawford, Schenck, Ondek,* and *Mercurio* are derived in essence from the constitutional doctrine of separation of powers. As the United States Supreme Court has stated, "[courts] are not equipped to decide desirability [of legislation]; and a court cannot eliminate measures which do not happen to suit its tastes if it seeks to maintain a democratic system. The forum for the correction of ill-considered legislation is a responsive legislature." *Daniel v. Family Security Life Insurance Co.,* 336 U.S. 220, 224, 69 S.Ct. 550, 93 L.Ed. 632 (1949) (quoted in *Martin v. Unemployment Compensation Board of Review,* 502 Pa. 282, 466 A.2d 107, 114 (1983)).

Turning to Appellants' first issue in the instant case, we must, as an initial matter, set forth in some detail the precise nature of Appellants' claim. Appellants challenge the Township's finding of blight, which, as discussed above, is a statutorily-required component of the ordinance creating the Victory Centre TIF district and project plan. *See* 53 P.S. § 6930.5(a)(6)(iv)(H); Appellants' Brief at 11. Appellants contend that the creation of the Victory Centre TIF district and the plan for development "do not comply with the letter or spirit of the TIF Act" because "the conditions surrounding the property of the Victory Centre TIF project is [sic] not 'blight.'" Appellants' Brief at 13. Appellants assert that they are challenging not the wisdom of the Victory Centre TIF project, but rather the legality of its statutory authorization

---

**7.** In reviewing a bad faith claim against the Philadelphia Redevelopment Authority, this Court recently cited *Crawford,* indicating its continuing vitality. *In re Redevelopment Authority of Philadelphia,* 595 Pa. 241, 938 A.2d 341, 345 (2007).

because the determination of blight was erroneous. *Id.* at 13–14, 20. Appellants insist that the court was required to accept as true the allegation in their complaints that the property was not blighted. *Id.* (citing *Willet, supra* at 853). In Appellants' view, "whether or not the property is blighted is a question that can only be evaluated by a court after a hearing on the merits." *Id.* at 27.

Turning first to the challenge brought under the Local Agency Law, we agree with the Commonwealth Court that a TIF resolution or ordinance, which includes the determination of blight, is a purely legislative enactment that is intended to spur local development; it is not an adjudication. *Mazur, supra* at 1265 (relying on reasoning in *Ondek, supra*). The Local Agency Law is not relevant to legislative enactments, but rather grants to an aggrieved person the right to appeal an agency adjudication, which is defined in relevant part as a final agency decision that affects personal or property rights. *Ondek, supra* (citing 2 Pa.C.S. § 101). In *In re Condemnation by the Urban Redevelopment Authority of Pittsburgh, supra* at 1378, an eminent domain case involving the Urban Redevelopment Law, this Court stated that "a certification of blight does not, in and of itself, have a *legal* effect on property rights." (emphasis in original). Therefore, we agree with the Commonwealth Court that a determination of blight under the TIF Act does not constitute an adjudication, but rather is a statutorily-required component of a legislative enactment under the TIF Act. Appellants have failed to advance any specific argument as to why the Local Agency Law should apply to their challenge to the determination of blight.[8] Accordingly, we hold that the Local Agency Law does not provide a vehicle for Appellants' challenge.

Turning next to Appellants' equity challenge to the Township's determination of blight and creation of a TIF district, we must note that Appellants raise a matter similar to that raised by the appellant in *Crawford*. Although in *Craw-*

8. In fact, Appellants conceded before the Commonwealth Court that their challenge was not a proper appeal under the Local Agency Law, pursuant to that court's holding in *Ondek, supra*. *See* Appellants' Brief at 8 n. 1; *Mazur, supra,* 926 A.2d at 1265 n. 6.

*ford* the challenge was brought under the Urban Redevelopment Law and in the instant case the challenge was brought under the TIF Act, we conclude that this distinction does not mandate a different resolution.[9]  As we made clear in *Crawford*, although a court may not substitute its judgment for that of the proper local authority with regard to a determination of blight, it is entirely proper for the court to review a claim regarding whether the authority has acted arbitrarily, in bad faith, contrary to statutory procedures, or in violation of any constitutional safeguards.  *Crawford, supra* at 868.  In *Crawford* we implicitly determined that such a claim presented a justiciable issue over which the trial court sitting in equity had jurisdiction.[10]  We can see no reason why the *Crawford* holding should not control the resolution of the instant case.  We conclude, therefore, that a court of common pleas does have jurisdiction in equity to review a challenge to a municipal ordinance declaring an area blighted and creating a TIF district, but that the matter is justiciable only if the court determines that the local authority acted arbitrarily, in bad faith, contrary to statutory procedures, or in violation of constitutional safeguards.

We turn now to Appellants' second issue, in which they contend that their allegations of the Township's bad faith

9.  As mentioned in the text *supra*, TIF is designed to function in concert with and as an alternative method for pursuing redevelopment efforts under the Urban Redevelopment Law. *See* 53 P.S. § 6930.2(a)(3). Furthermore, the determination of blight under the TIF Act relies on characteristics of blight described in the Urban Redevelopment Law. *See* 53 P.S. § 6930.5(a)(6)(iv)(H).  Under both the TIF Act and the Urban Redevelopment Law, a determination that a property is blighted is necessary for further redevelopment efforts. *See* 53 P.S. § 6930.5(6) and 35 P.S. §§ 1709(i) and 1712.1.

10.  Thus perforce, we reject the Commonwealth Court's conclusion that the court of common pleas did not have subject matter jurisdiction in equity over Appellants' claims. *See Heath v. WCAB (Pa. Bd. of Probation and Parole)*, 580 Pa. 174, 860 A.2d 25, 29 (2004) (explaining that the test for determining whether a court has jurisdiction of the subject matter is the competency of the court to determine controversies of the general class to which the case presented for its consideration belongs. In other words, the critical question is whether the court had power to enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case.)

in finding blight are sufficient to withstand Appellees' prelimi-
nary objections in the nature of a demurrer. It is well-
established that bald assertions of bad faith are not sufficient
to overcome preliminary objections in the nature of a demur-
rer. Rather, to be legally sufficient, the pleadings must
include clear averments of fact to support the assertion of bad
faith. *See In re Condemnation by the Redevelopment Author-
ity of the City of Lancaster*, 682 A.2d 1369, 1372 (Pa.Cmwlth.
1996).

Appellants expressly state in their brief that their allegation
of bad faith was set forth in the following paragraph of their
complaint:

   a.  The property at issue must be considered "blight" under
       the law in order to be eligible for TIF treatment (TIF
       Act at § 6930.5(a)(6)(IV)(H)). The municipal body,
       South Strabane Township[,] responsible for making a
       determination of blight, had already voted, consistent
       with the recommendations of a hired township planner[,]
       that the township's comprehensive plan be amended to
       identify the area as a *"prime location* for regional
       shopping and entertainment". In fact[,] the property is
       located near the intersection of two interstate highways,
       adjacent to the Meadows racetrack, anticipated to re-
       ceive gambling licensing, and concomitant traffic and
       income, as well located [sic] in one of [the] nation's
       highest concentrations of hunting and fishing licensees.
       In light of South Strabane Township's vote on August
       23, 2005[,] by a 5–0 margin to rezone the property at
       issue to a commercial designation, with the specific
       conditions suggested by township planner Roberta Sar-
       raf and specifically including identifying the area as a
       prime location for regional shopping and entertainment,
       said property cannot reasonably be designated "blight-
       ed", a precondition to TIF approval, absent bad faith.

Appellants' Brief at 29 (emphasis in original) (quoting Com-
plaint at 6–7).

These factual allegations, which the court accepts as true for
purposes of ruling on a demurrer, do not even come close to

establishing bad faith. It is not necessarily inconsistent for a tract of land to be characterized both as blighted and as a prime location for regional shopping and entertainment.

The TIF Act contains the following statement of findings concerning blight, which mimics the findings in the Urban Redevelopment Law:

The General Assembly previously found in the enactment of ... the Urban Redevelopment Law, that, among other things, there exist in urban communities in this Commonwealth areas which have become blighted because of:

(i) the unsafe, unsanitary, inadequate or over-crowded condition of the dwellings in the area;

(ii) inadequate planning of the area, or excessive land coverage by the buildings thereon;

(iii) the lack of proper light and air and open space;

(iv) the defective design and arrangement of the buildings;

(v) faulty street or lot layout; or

(vi) economically or socially undesirable land uses.

53 P.S. § 6930.2(a)(1); *see also* 35 P.S. § 1702(a) (same factors in Urban Redevelopment Law).

In addition, the TIF Act expressly states that the applicable characteristics of blight are described in the Urban Redevelopment Law. *See* 53 P.S. § 6930.5(a)(6)(iv)(H). The relevant sections of the Urban Redevelopment Law provide that blighted property shall include premises that are a public nuisance or an attractive nuisance to children; any dwelling designated as unfit for human habitation; any structure that is a fire hazard or is otherwise dangerous; any structure lacking functional facilities so that it is unfit for its intended purpose; a vacant or unimproved tract in a predominantly built-up neighborhood which is a haven for vermin or trash; or certain unoccupied, vacant, or abandoned properties. 35 P.S. § 1712.1(c).

The above statutory provisions indicate that a tract of land may be considered a prime location for shopping and entertainment, *and* simultaneously exhibit one or more of the

characteristics of a blighted property. Thus, the mere fact that the property in question here was designated as a prime location for shopping and entertainment cannot on its own establish that the Township exhibited bad faith when it also characterized the property as blighted. Because Appellants have not met their burden to plead facts sufficient to establish bad faith, their second issue must fail.[11]

In sum, we hold that: 1) a court of common pleas does not have jurisdiction under the Local Agency Law to review a challenge to a municipal authority's designation of blight under the TIF Act; 2) a court of common pleas does have jurisdiction in equity to review such a claim; and 3) a complaint containing such a claim states a justiciable cause of action only when it contains well-pled allegations that the municipal authority acted arbitrarily, in bad faith, contrary to statutory procedures, or in violation of any constitutional safeguards. We further hold that Appellants in the instant case have not met their burden to plead clear averments of fact to support their allegations of bad faith.

Order affirmed.

Chief Justice CASTILLE, and Justice SAYLOR, EAKIN and BAER and TODD and GREENSPAN join the opinion.

---

11. Appellants also claim in their brief that the Township's characterization of the same property both as prime commercial land and as blighted establishes that the Township acted arbitrarily. However, their complaint does not allege that the Township acted arbitrarily in this regard; the complaint only alleges bad faith. Accordingly, the issue of whether the Township acted arbitrarily was neither before the lower courts, nor before this Court.