**Carolee Medico OLENGINSKI, Prothonotary of Luzerne County, Appellant**

v.

**The COUNTY OF LUZERNE c/o Luzerne County Commissioners, Thomas P. Cooney, Luzerne County Government Study Commission, MaryAnne C. Petrilla and Stephen A. Urban.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 17, 2011.

Decided June 24, 2011.

Samuel C. Stretton, West Chester, for appellant.

John G. Dean, Mark W. Bufalino and Matthew J. Carmody, Wilkes–Barre, for appellees.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and BUTLER, Judge.

OPINION BY Judge PELLEGRINI.

Carolee Medico Olenginski (Olenginski) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) granting the preliminary objections filed by the County of Luzerne County c/o Luzerne County Commissioners; Thomas P. Cooney; Luzerne County Government Study Commission; MaryAnne C. Petrilla; and Stephen A. Urban (collectively, the County), dismissing her complaint in equity with prejudice and denying her motion for a preliminary injunction. For the reasons that follow, we affirm the trial court's order.

Olenginski is the elected prothonotary of Luzerne County and was elected to that office in 2009 to hold that position until 2014. In that capacity, she performs recording-keeping and related functions for the judiciary. On August 11, 2010, the Luzerne County Home Rule Charter Study Commission (Commission) recommended that the question of adopting a home rule charter be submitted to the electors of Luzerne County. The issue was placed on the ballot and on November 2, 2010, a majority of the electors of Luzerne County voted to adopt the home rule charter recommended by the Commission. The sections of the home rule charter that are applicable to this appeal are:

Section 12.04—abolishes the office of the Prothonotary effective with the end of the term;

Section 12.07(e)—the duties and responsibilities of the Office of Prothonotary shall be taken over by a "Division of Judicial Services and Records" to be appointed by the County Council;

Section 12.08(b)—the duties and responsibilities of the Prothonotary shall be transferred to the Division of Judicial Services and Records;

Section 12.08—the elected Prothonotary may remain with compensation and the title of "Prothonotary" until the end of the elected term but will have no duties and responsibilities because those will be taken over by the Division of Judicial Services; and

Section 12.02—the effective date of the new form of government shall be Monday, January 2, 2012.

Olenginski filed a two-count complaint in equity seeking declaratory and preliminary and permanent injunctive relief; she also

filed a motion for a preliminary injunction. She challenged all of the above-listed sections of the home rule charter alleging that they violated the Separation of Powers Doctrine of the Pennsylvania Constitution, specifically, Art. V, Sec. 10 of the Pennsylvania Constitution, because it allowed the Executive Branch to take over the filing and record-keeping duties of the Judicial Branch. She alleged that the Prothonotary's Office was a part of the Judicial Branch of government whose responsibilities, under the charter, would be assumed by the Executive Branch. In response, the County filed preliminary objections to the complaint in the nature of a demurrer alleging that they did not violate any Pennsylvania statute or the Separation of Powers Doctrine; the Prothonotary's Office was not part of the judiciary; and Olenginski lacked standing or capacity to sue.

■ The trial court granted the County's preliminary objections, dismissed Olenginski's complaint with prejudice and denied her motion for a preliminary injunction. The trial court explained that the prothonotary was not a member of the judiciary but rather someone who performed ministerial functions for the judiciary as prescribed by the judiciary. It relied on *In Re Administrative Order No. 1–MD–2003*, 594 Pa. 346, 360, 936 A.2d 1, 9 (2007), where our Supreme Court specified that the "role of the prothonotary of the court of common pleas, while vitally important, is purely ministerial ... [citations omitted] ... As a purely ministerial office, any authority exercised by the prothonotary must derive from either statute or rule of court ... [citations omitted] ... Fur-

ther, as '[t]he prothonotary is merely the clerk of the court of Common Pleas[,][h]e has no judicial powers, nor does he have power to act as attorney for others by virtue of his office.'" (Trial court's March 18, 2011 opinion at 4.) The trial court also determined that it was irrelevant whether the prothonotary's duties were conducted by an official who was elected or they were administered by an appointed individual. This appeal by Olenginski followed.[1]

■ Olenginski contends that the trial court erred by relying on *In Re Administrative Order* in determining that the prothonotary is not part of the judiciary because that case arose out of a county clerk who appealed an administrative order directing him to seal certain records in his custody. In other words, that was an enforcement action, not an action brought to determine whether the prothonotary was a judicial officer and whether Doctrine of Separation of Powers and the independence of the judiciary would be violated if her position was occupied by a person appointed by the County Commissioners. In support of her position, she selectively edits *In Re Administrative Order* by only quoting the italicized portion of the full quote as follows:

> *As a purely ministerial office, any authority exercised by the prothonotary must derive from either statute or rule of court.* Gotwalt [*v. Dellinger*, 395 Pa.Super. 439], 577 A.2d [623] at 625 [ (1990) ]. (citing *Newsome v. Braswell*, 267 Pa.Super. 83, 406 A.2d 347, 349 (1979)). Further, as "[t]he prothonotary is merely the clerk of the court of Common Pleas[,] [h]e has no judicial powers,

---

1. In reviewing a trial court's grant of preliminary objections, the standard of review is *de novo* and the scope of review is plenary. *Mazur v. Trinity Area School District*, 599 Pa. 232, 961 A.2d 96 (2008). The salient facts are derived solely from the complaint and pursu-

ant to that standard of review, the court accepts all well-pleaded material facts in the complaint, and all inferences reasonably deduced therefrom must be accepted as true. *Connor v. Archdiocese of Philadelphia*, 601 Pa. 577, 975 A.2d 1084 (2009).

nor does he have power to act as attorney for others by virtue of his office." *Id.* (citing *Smith v. Safeguard Mutual Insurance Co.,* 212 Pa.Super. 83, 239 A.2d 824, 826 (1968)). Consistent therewith, "[t]he prothonotary is not 'an administrative officer who has discretion to interpret statutes.'" *Thompson v. Cortese,* 41 Pa.Cmwlth. 174, 398 A.2d 1079, 1081 (1979) (quoting *Warner v. Cortese,* 5 Pa.Cmwlth. 51, 288 A.2d 550, 552 (1972)) . . . *Thus, while playing an essential role in our court system, the prothonotary's powers do not include the judicial role of statutory interpretation.*

*Id.* at 360, 936 A.2d at 9. She then argues that the "strong language above reflects that the Prothonotary's office is part of the judicial system." (Appellant's brief at 26.) As the full quote indicates, "the prothonotary is merely the clerk of the Court of Common Pleas[,] [h]e has no judicial powers." Having no judicial powers, a prothonotary is not a judicial officer, and providing for an appointed official does not implicate in any way the doctrine of separation of powers.

Our Supreme Court's holding that prothonotaries are not judicial officers is ultimately based on how the judiciary power and the office of prothonotary are defined under the Constitution. Art. IX, Sec. 4 of the Pennsylvania Constitution, titled **County government,** provides that:

> *County officers shall consist of* commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs, registers of wills, recorders of deeds, *prothonotaries,* clerks of the courts, and such others as may from time to time be provided by law. (Emphasis added.)

> \*      \*      \*

Provisions for county government in this section shall apply to every county except a county which has adopted a home rule charter or an optional form of government.

Under this Article and Section of the Pennsylvania Constitution, prothonotaries are county officers, not members of the judiciary.

While Olenginski argues that the prothonotary must be part of the judiciary because it is supervised and regulated by the judiciary pursuant to Art. V, Secs. 1 and Sec. 10 of the Pennsylvania Constitution, nowhere in the Pennsylvania Constitution is it stated that prothonotaries are part of the judiciary and neither of those sections provides that the judiciary supervises the office of the prothonotary.

Art. V, Sec. 1 provides:

§ 1. **Unified judicial system**

The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system.

Similarly, Art. V, Sec. 10 provides:

§ 10. **Judicial administration**

(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate.

(b) The Supreme Court shall appoint a court administrator and may appoint such subordinate administrators and staff as may be necessary and proper for the prompt and proper disposition of the

business of all courts and justices of the peace.

Subsections (c), (d) and (e) also do not mention prothonotaries.

Ignoring that the Pennsylvania Constitution does not make a prothonotary a judicial officer, Olenginski argues that the prothonotary is somehow made a part of the judiciary because under 204 Pa.Code § 181.3(a), "The policy of the Judicial Branch and the Unified Judicial System shall be to develop and maintain conformity and compatibility in the design, planning, function and operation of the computerized systems or recordkeeping." However, Olenginski fails to include the next subsection which states: (b) "The Administrative Office is authorized to implement the policy set forth in subsection (a) of this section." This regulation, even if it could, does not make the prothonotary part of the judiciary.

While the records of the courts are part of the judiciary and the prothonotary takes part in the record-keeping, the prothonotary is not a judicial officer but a county officer, and the doctrine of separation of powers does not prohibit the County by home rule charter amendment from abolishing that office.

Accordingly, the order of the trial court is affirmed.[2]

### *ORDER*

AND NOW, this 24th day of June, 2011, the order of the Court of Common Pleas of Luzerne County, dated March 18, 2011, is affirmed.

---

2. Olenginski argues that because Rule 505(11) of the Pennsylvania Rules of Judicial Administration requires the Administrative Office of the Pennsylvania Supreme Court to supervise the office of the Prothonotary, that supervision proves that the prothonotary falls within the Unified Judicial System. All that Rule 505(11) proves is that the record-keeping that is required of the courts is supervised, not that the prothonotary is part of the judiciary.