**[J-60-2019] [MO:Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, BY JOSH SHAPIRO, ATTORNEY GENERAL; PENNSYLVANIA DEPARTMENT OF INSURANCE, BY JESSICA K. ALTMAN, INSURANCE COMMISSIONER AND PENNSYLVANIA DEPARTMENT OF HEALTH, BY RACHEL LEVINE, SECRETARY OF HEALTH : | No. 39 MAP 2019<br><br>Appeal from the Order of the Commonwealth Court, dated April 3, 2019, at 334 MD 2014.<br><br>ARGUED: May 16, 2019 |
| v. : | |
| UPMC, A NONPROFIT CORP.; UPE, A/K/A HIGHMARK HEALTH, A NONPROFIT CORP. AND HIGHMARK, INC., A NONPROFIT CORP. : | |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA, BY JOSH SHAPIRO, ATTORNEY GENERAL : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE BAER**                                                    **DECIDED: May 28, 2019**

While I agree with the Majority that the Commonwealth Court erred in holding that this matter is controlled by our prior decision in *Commonwealth by Shapiro v. UPMC*, 188 A.3d 1122 (Pa. 2018) ("*Shapiro I*"), I respectfully dissent from my colleagues' conclusion that the modification provision of the parties' Consent Decree is ambiguous, necessitating a remand to the Commonwealth Court for evidentiary development of the parties' intent

in using the term "modification."[1]  Instead, I conclude that the "modification" sought by the OAG is not a modification at all but, rather, an attempt to seek judicial intervention to eliminate the termination date and impose upon UPMC a permanent injunction requiring that it remain tethered to Highmark indefinitely.  As this relief is unavailable as a matter of law under the terms of the Consent Decree, I would affirm the Commonwealth Court's order granting UPMC's preliminary objection in regard to subparagraph (r) of Count 1 of the OAG's Petition to Modify Consent Decrees.

Initially, I commend the Majority for its succinct recitation of the extensive history of this litigation arising from the respective Consent Decrees between OAG and UPMC and Highmark.  I further adopt the Majority's erudite explication of the law relevant to the issues raised in this case.[2]

---

[1] The Modification Provision of the Consent Decrees provides as follows:

> 10. Modification - If the [Office of the Attorney General], [Department of Insurance], [Department of Health] or UPMC believes that modification of this Consent Decree would be in the public interest, that party shall give notice to the other and the parties shall attempt to agree on a modification. If the parties agree on a modification, they shall jointly petition the Court to modify the Consent Decree. If the parties cannot agree on a modification, the party seeking modification may petition the Court for modification and shall bear the burden of persuasion that the requested modification is in the public interest.

UPMC Consent Decree § IV(C)(10) (the "Modification Provision").  Notably, the Office of the Attorney General (OAG) is proceeding, at this juncture, without the support of the Department of Insurance and the Department of Health, which are also parties to the Consent Decree.

[2] In so doing, I recognize that the case presents to the Court on UPMC's preliminary objections in the nature of a demurrer to OAG's Petition to Modify the Consent Decree. Thus, as noted by the Majority, I accept as true all well-pled allegations of fact and any inferences deducible therefrom as asserted by OAG.  Maj. Slip Op. at 15 (citing *Mazur v.*

As noted, I agree with the Majority's holding that the Commonwealth Court erred in determining that the question in this case is controlled by this Court's decision in *Shapiro I.* For the reasons ably set forth by the Majority, I conclude that this Court's interpretation of the language of the termination provision in *Shapiro I* is tangential to, rather than controlling of, the question currently before this Court regarding the application of the Modification Provision to the termination provision.[3]

Nevertheless, I am compelled to dissent because, contrary to the Majority, I conclude that the intent of the parties in regard to the Modification Provision is clear and unambiguous when considered in the context of the entirety of the Consent Decree. As we observed in *Shapiro I*, a court's interpretation of a consent decree is governed by standard principles of contract law, where "the primary objective" is to ascertain the intent of the parties. *Shapiro I*, 188 A.3d at 1131. We have recognized that the parties' intent may be derived from "the entire contract . . ., taking into consideration the surrounding circumstances, the situation of the parties when the contract was made and the objects they apparently had in view and the nature of the subject matter." *Id.* (citations omitted)*.*

Even if the Majority is correct that the term "modification" standing alone, may be amenable to a wide continuum of definitions, arguably ranging from a slight alteration to even a significant change, the term cannot be read to encompass the elimination of a key term of an agreement and, by sleight of hand, transform it from a mutual understanding

---

*Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008)). I further agree with the Majority's assessment that "UPMC's demurrer may be sustained only if it is clear as a matter of law that OAG's requested relief is impermissible under the Modification Provision - that the provision unambiguously establishes with 'certainty that no recovery is possible.'" *Id.* at 17-18 (quoting *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 274 (Pa. 2005)).

[3] The Termination Provision unambiguously provides, "This Consent Decree shall expire five (5) years from the date of entry." UPMC Consent Decree § IV(C)(9) (the "Termination Provision").

into an affirmative permanent injunction. I make this assertion fully recognizing that the language of the Modification Provision, as noted by the Majority, is broad and could arguably allow a revision of the termination date, as it contains no textual limitation except that any modification should serve the public interest. Nevertheless, OAG is simply not seeking to modify the termination date by substituting a new date, but rather, it is attempting to eliminate the termination date and instead provide for the Consent Decree to proceed "indefinitely." OAG Petition at ¶ 75(r) ("Extending the duration of the modified Consent Decrees indefinitely"). Respectfully, I reject the conclusion that additional fact-finding is required to determine whether the parties intended the Modification Provision to allow for the deletion of a fundamental contract provision.

As is clear from the language of the Consent Decree and the prior decisions of this Court, the intent of the parties was to address the crisis and confusion caused by the imminent termination of the Provider Agreements between UPMC and Highmark in 2014. *See, generally, Commonwealth ex rel. Kane v. UPMC*, 129 A.3d 441, 446-47 (Pa. 2015) (observing that prior to the entry of the Consent Decrees, UPMC and Highmark "engaged in extensive and costly lobbying, advertising campaigns, and litigation which . . . contributed to the public's confusion and misunderstanding" (citation omitted)). To protect the vulnerable populations, the parties painstakingly negotiated a five-year wind-down of the UPMC/Highmark Provider Agreements to avoid the potentially devastating effects of a sudden change in health coverage. This was done to allow insureds time to transition to new plans or new health providers, and to provide certainty in regard to the ultimate termination date, which at that time was in flux causing public confusion based upon the media's coverage of UPMC and Highmark's incessant contractual disputes. *Id.* at 464 (recognizing that the purpose of the Consent Decrees was "to provide a measure of enduring certitude and security for health care consumers who were members of certain

Highmark health care plans, that they would not incur significant costs in seeking treatment at UPMC facilities if UPMC followed through on its promise to terminate provider contracts for these plans at the end of 2014"). In effect, June 30, 2019, was the date established to provide clarity to all the relevant parties and the public.

OAG now seeks judicial intervention to modify the Consent Decree, in its parlance, to extend the termination date "indefinitely." OAG Petition at ¶ 75(r). In so doing, OAG attempts to negate, rather than modify, an essential term of the Consent Decree. In *Salazar v. District of Columbia*, 896 F.3d 489 (D.C. Cir. 2018), the federal circuit court explained that there is a substantive distinction between modifying a consent decree and effectively entering a mandatory injunction. *See id.* at 498 ("Courts may not, under the guise of modification, impose entirely new injunctive relief.").[4] From my point of view, an indefinite extension of a consent decree, particularly a long-term one such as the one at issue here, crosses the line from modification to innovation of new measures in the form of a mandatory injunction. Moreover, if injunctive relief were to be granted, this Court should be concerned, premised upon the parties' past behavior, that the courts of this Commonwealth will be called upon to superintend aspects of the parties' separation indefinitely. There is no need for an evidentiary hearing to opine with certainty that the parties did not intend for the Modification Provision to allow the court to extinguish the termination date permanently.

As noted by UPMC, it has maintained a contractual relationship for the duration of the five-year transition period, as required by the Consent Decree. UPMC convincingly

---

[4] Federal courts have inherent authority to modify consent agreements, *see Salazar*, 896 F.3d at 491; whereas, under the prevailing law in Pennsylvania, courts have inherent power only in instances of fraud, accident, or mistake. *See Sabatine v. Commonwealth*, 442 A.2d 210, 212 (Pa. 1981). Nevertheless, I find the distinction made in *Salazar* between modification and injunctive relief to be equally relevant to a Pennsylvania consent decree containing an express modification provision.

argues that "modifying" the Termination Provision in the eleventh hour to eliminate the definitive end date of June 30, 2019, and instead allow the agreements to continue "indefinitely" would result in UPMC having completed its core contractual obligation while OAG is released from its obligations. UPMC Brief at 32-33. UPMC additionally stresses that substantial aspects of the wind down have already occurred, and, under the terms of the Consent Decree, millions of dollars have been spent to make the public aware of its termination as of June 30. *See* Consent Decree § IV(B). Presumably, many individuals have acted in reliance on this information.

It is notable that OAG has not suggested a specific reason why June 30th is an unworkable termination date, as it argued unsuccessfully in *Shapiro I.* Rather, it essentially asserts that the termination of the agreement will cause harm to participants, regardless of when such termination occurs, if ever. Respectfully, as said, this is not an attempt to "modify" the Termination Provision, but rather an attempt to eliminate the Termination Provision and substitute language to allow the Consent Decree to continue into perpetuity, contrary to the clear intent of the parties. I consequently agree with UPMC that OAG's interpretation of "modification" is untenable. For this reason, I dissent and would affirm the Commonwealth Court's order granting UPMC's preliminary objection on this alternative basis.[5]

---

[5] Given that a majority of the Court agrees that the Modification Provision is ambiguous and that a remand is needed for a factual determination by the Commonwealth Court, I would suggest that the Court direct that all proceedings in the Commonwealth Court be completed by a date certain, which would allow this Court to address the inevitable subsequent appeal prior to the June 30, 2019, termination date.

I am less confident than the majority that the discovery, hearings, and fact-finding necessary to effectuate its ruling can be accomplished prior to the June 30th termination date. *See* Maj. Slip Op. at 21-22. Although the Majority asserts that the issue before the Commonwealth Court is a narrow one requiring only a limited evidentiary record, this will be true only if UPMC prevails on the question of the parties' intent relative to modification.

Chief Justice Saylor and Justice Donohue join this opinion.



Should the OAG prevail, it must then meet its burden of proof, under the express terms of the Modification Provision, that modification is in the public interest. From my point of view, this is neither a narrow question nor one implicating a limited evidentiary record.

Additionally, to the degree that the Majority suggests that the Commonwealth Court might preliminarily extend the termination date for the Consent Decree if a decision cannot be rendered prior to that date, *see id.* at 21 n.13, I suggest that the OAG should be required to file an appropriate application and meet the burden of establishing all prerequisites to a mandatory preliminary injunction. In this regard, in absence of a judicial determination that the termination date is susceptible to "modification," I do not believe that preliminary relief could be fairly couched as anything other than a mandatory injunction.

Moreover, it is worthwhile to acknowledge that if litigation is allowed to continue past June 30th, not only will OAG be successful in its attempt to extend the agreement, regardless of this Court's eventual merits review of the modification question, but more significantly, the public will suffer from confusion as to when and whether the UPMC/Highmark relationship will eventually end and the potentiality of it ending abruptly upon conclusion of this litigation, negating the entire purpose of the five-year wind-down of the Consent Decrees.