J-A16028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LIBERTY SQUARE P1, LLC; LIBERTY SQUARE P2, LLC; AND LIBERTY SQUARE P3, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| JOSHUA KORN | : | No. 2347 EDA 2024 |

Appeal from the Order Entered August 2, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  230903274

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:              **FILED MAY 30, 2025**

The Plaintiffs, Liberty Square P1, LLC; Liberty Square P2, LLC; and Liberty Square P3, LLC (collectively, "Liberty Square"), appeal from the order sustaining Joshua Korn's preliminary objections and dismissing the complaint with prejudice.  The trial court acknowledges that it mistakenly entered that order, because Liberty Square successfully pleaded a cause of action.  Because we agree with the trial court that this matter should proceed, we modify the trial court's order and remand for Mr. Korn to file his answer to the amended complaint.

This appeal involves preliminary objections in the nature of a demurrer. Therefore, we "must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts."  ***Mazur v. Trinity Area Sch. Dist.***, 961 A.2d 96, 101 (Pa. 2008). According to the operative complaint, Liberty Square and its investors entered

into three contracts regarding management and operations of Liberty Square Condominium in Philadelphia.  Mr. Korn is not a party to those contracts, nor does he have an interest in Liberty Square.  ***See*** First Amended Complaint at 3.

Liberty Square hired James Conley, a mortgage broker, "to refinance existing financing, as well as to fund on-going business expenses."  ***Id.***  On November 8, 2022, Liberty Square also initiated a capital call to raise funds from its investors, pursuant to the terms of the three contracts.

Mr. Korn improperly contacted Mr. Conley to stop Liberty Square from refinancing its loans.  He also improperly contacted Liberty Square's investors "to urge them not provide funds in accordance with the capital call" under the terms of the contracts.  ***Id.*** at 4.  Because of Mr. Korn's "wrongful contacts with the other investors urging them to withhold funds from [Liberty Square], no investors, other than entities controlled by Alexander and Malka Weingarten, provided funds in accordance with the capital call."  ***Id.***  Most of the investors breached their contractual obligations to meet the capital call.

Due to Mr. Korn's interference with the investors' contractual obligations to answer the capital call, Liberty Square had to obtain "temporary financing to cover expenses  . . . ."  ***Id.*** at 5.  Liberty Square contacted ANDY Realty Holdings, "a lender . . . to cover expenses for which the capital call was originally intended."  ***Id.***  On March 2, 2023, Mr. Korn met with ANDY Realty Holdings and "improperly and without authority interfered with [Liberty Square's] efforts to secure capital from ANDY Realty . . . ."  ***Id.*** at 5-6.  He

lied to ANDY Realty by stating that Liberty Square had obtained sufficient funding from another source.

Mr. Korn's acts "were intended to wrongfully and improperly interfere with the existing and prospective contractual relations between [Liberty Square] and James Conley, between [Liberty Square] and the investors, and between [Liberty Square] and ANDY Realty . . . as part of a scheme to force [Liberty Square] to purchase the interests of other investors" for the condominium. *Id.* at 6.

On March 3, 2023, ANDY Realty issued a loan to Liberty Square. Liberty Square also secured a subsequent loan from Mr. Conley, which it used to pay off the loan from ANDY Realty. If Mr. Korn had not interfered with Liberty Square's capital call, those loans would not have been necessary. ***See id.*** at 6-7.

As a result of Mr. Korn's interference with Liberty Square's contracts with its investors, Liberty Square expended large sums of money to obtain and pay back those loans. Its expenses included a loan origination fee, legal fees of the lenders, an appraisal, architectural fees, and broker's fees. ***See id.*** at 8. They totaled $761,076.25. Additionally, Mr. Korn caused Liberty Square to "incur a capitalized interest expense of $962,016.66." ***Id.*** Liberty Square also estimates that Mr. Korn's tortious conduct cost it $1,380,800 in perspective retail and rental income. ***See id.*** at 9.

Liberty Square filed this action against Mr. Korn. The complaint raised a single count for intentional interference with contractual relations. Liberty

Square sought over $4,500,000.00 in compensatory and punitive damages. It also requested reimbursement of its attorneys' fees from Mr. Korn.

Mr. Korn preliminarily objected to the complaint, and Liberty Square filed an amended complaint. Mr. Korn then filed four preliminary objections in the nature of a demurrer to the amended complaint. His first and second objections asserted that Liberty Square's complaint failed to state a cause of action for intentional interference with contractual relations. His third objection contended that Liberty Square is not entitled to attorneys' fees. Mr. Korn's fourth objection claimed Liberty Square failed to plead facts that supported punitive damages.

The trial court sustained all the preliminary objections and dismissed the amended complaint with prejudice. This timely appeal followed.

Liberty Square raises three appellate issues, which we have reordered for ease of disposition as follows:

1. Did the trial court commit an error of law or abuse of discretion by sustaining the preliminary objections to Liberty Square's first amended complaint . . . when Liberty Square sufficiently plead the elements of intentional interference with existing and prospective relations?

2. Did the trial commit an error of law by sustaining preliminary objections and dismissing the first amended complaint with prejudice when the trial court failed to make a determination that there was a reasonable possibility that Liberty Square could allege facts that cure any deficiency in the first amended complaint and should have been granted leave to amend?

3. Did the trial court commit an error of law by failing to address the merits of the sufficiency of the cause of action in Liberty Square's first amended complaint, sustaining the

preliminary objections without analysis or opinion because Liberty Square did not file a response?

Liberty Square's Brief at 3-4. We address only the first claim of error, because it is dispositive of this appeal.

Liberty Square contends that the facts alleged in its operative complaint are legally sufficient to state a cause of action for intentional interference with contractual relations. It also contends that it sufficiently pleaded facts which establish its right to compensatory and punitive damages. Thus, it asks us to reverse the appealed-from order, to the extent it sustained Mr. Korn's first, second, and fourth preliminary objections. Liberty Square concedes, however, that there is no basis for requiring Mr. Korn to pay its attorneys' fees for this case. Therefore, it does not seek reversal of the order, in so far as it sustained Mr. Korn's third preliminary objection. ***See id.*** at 17 n.2.

Upon receiving Liberty Square's Rule 1925(b) statement, the trial court concluded that it should ***not*** have sustained two of the preliminary objections. The trial court asks us to "issue a remand in this matter[, because] this court . . . made an error of law when it sustained [Mr. Korn's] first and fourth preliminary objections, dismissing the amended complaint with prejudice." Trial Court's Letter to Superior Court, 1/24/25, at 1. In the trial court's view, "a remand is in order to alleviate this appeal." ***Id.***

Mr. Korn disagrees that a remand is appropriate. He contends the trial court correctly sustained all the preliminary objections and urges us to affirm. ***See*** Korn's Brief at 7-10. Mr. Korn observes that "this Court's [standard of]

review is *de novo*, and it 'may affirm any order brought before it for review' on any appropriate basis supported by the record." ***Id.*** at 9 (quoting 42 Pa.C.S.A. § 706; also citing ***In re T.P.***, 78 A.3d 1166, 1170 (Pa. Super. 2013)) (some punctuation omitted). ***See also Mazur***, 961 A.2d at 101 ("When an appellate court rules on whether preliminary objections in the nature of a demurrer were properly sustained, the standard of review is *de novo*, and the scope of review is plenary.")  In accordance with our standard of review, we will assess *de novo* Mr. Korn's preliminary objections.

To allege intentional interference with a contractual relationship, the plaintiff must plead:

(1)    a contractual relationship between the plaintiff and the third parties;

(2)    intent by the defendant to harm the plaintiff by interfering with that contractual relationship;

(3)    absence of privilege or justification by the defendant; and

(4)    resultant damages.

***See Salsberg v. Mann***, 262 A.3d 1267, 1270 (Pa. Super. 2021), *affirmed*, 310 A.3d 104 (Pa. 2024); ***see also Phillips***, ***supra***.

According to Mr. Korn, Liberty Square failed to plead a cause of action for intentional interference with contractual relations, because a "plaintiff must plead . . . 'the absence of privilege or justification' for the acts of the defendant

that resulted in the third party's breach." Korn's Brief at 11-12 (quoting ***Phillips v. Selig***, 959 A.2d 420, 429 (Pa. Super. 2008)). Mr. Korn claims that to determine whether his conduct meets the absence-of-privilege-or-justification standard, the question is whether his interference violates the basic rules of society. ***See id.*** In his view, "at most, [Liberty Square] allege[s] nothing more than that [Mr. Korn] expressed his opinion to the investors about whether they should give more money to [Liberty Square]." ***Id.*** at 13.

Mr. Korn's argument is predicated on a misunderstanding of our scope of review for this issue. He is not entitled to rely upon his own view of the facts at this stage of the proceedings. Instead, we must accept as true only those facts that Liberty Square alleged, not the facts that Mr. Korn believes that it alleged. ***See Mazur***, ***supra***. Nor may we draw any inferences from the facts in favor of Mr. Korn, because he is the party seeking judgment as a matter of law. ***See id.***

Liberty Square did not allege Mr. Korn merely "expressed his opinion to the investors about whether they should give money to [Liberty Square]." Mr. Korn's Brief at 13. Liberty Square alleged that Mr. Korn "disparaged the Liberty Square Condominium and depressed the perception of its value in the marketplace." First Amended Complaint at 5. Mr. Korn "misrepresent[ed] himself as a representative of the project and contact[ed] third parties soliciting insufficient offers to buy the Liberty Square Condominium, a real estate development managed and owned in part by [Liberty Square]." ***Id.*** He also "misled the principals of ANDY Realty [Holdings] by falsely alleging

that [Liberty Square] had already obtained sufficient financing." ***Id.*** at 6. Mr. Korn's inference "was not privileged or justified." ***Id.***

Viewing the above facts in favor of Liberty Square, we conclude that it did not plead that Mr. Korn simply expressed his opinion about Liberty Square to the investors. He did far more than that. And, critically, Liberty Square alleged that Mr. Korn did these things without privilege or justification. Hence, there is no basis to conclude that, as a matter of law, Mr. Korn adhered to the basic rules of society.

Rather, Liberty Square sufficiently pleaded intentional interference with contractual relations, because it:

> alleged the [existence of the] contracts at issue [with its investors] as well as other specific prospective investors with whom [Mr.] Korn interfered. The [three contracts] were all attached to the Amended Complaint as well. [Liberty Square] alleged an intent by [Mr.] Korn to harm [it] without privilege or justification. [It] also alleged the harm that was caused by [Mr.] Korn's interference with the investors who did not respond to the capital call and by his interference with other potential financing in hopes that Liberty Square would have to purchase the interests of other investors and/or be required to sell the property. A claim for tortious interference was properly asserted.
>
> [In addition, Liberty Square] properly asserted claims for damages as a direct result of [Mr.] Korn's tortious interference with the investors and other means of financing. "As a result of [Mr.] Korn's intentional interference with existing contractual relations, [Liberty Square] incurred unnecessary fees and costs . . ." ([First Amended Complaint] at ¶ 40). [Liberty Square then . . . detail[ed] various damages incurred due to the temporary loan from Nuveen Capital including loan origination fees, legal and administrative fees, prepayment and broker's fees. The First Amended Complaint then details several items of damage. The trial court [therefore] erred as a matter of law in granting preliminary objection 2.

[Finally,] punitive damages can be awarded in tortious interference cases where there is "wanton, willful, or reckless conduct. *See Empire Trucking Co.* [*v. Reading Anthracite Coal*, 71 A.3d 923, 937 (Pa. Super 2013)]. Liberty Square properly pleaded throughout the First Amended Complaint the "wanton, willful or reckless" conduct by [Mr.] Korn and requested punitive damages as one of [its] elements of damage. This is sufficient to withstand preliminary objections, and the trial court agreed that it had made an error of law as to preliminary objection 4. [See Trial Court's Letter to Superior Court, 1/24/25, at 1.]

Liberty Square's Brief at 15-17 (some citations to reproduced record omitted).

We adopt Liberty Square's above argument as the analysis of this Court and modify the appealed-from order to overrule Mr. Korn's first, second, and fourth preliminary objections.[1] Order modified to read as follows:

AND NOW, this 2nd day of August 2024, upon consideration of the Defendant's Preliminary Objections to Plaintiffs' Amended Complaint, it is hereby Order and Decreed that Defendant's Preliminary Objection No. 3 is SUSTAINED and that Defendant's Preliminary Objections Nos. 1, 2, and 4 are OVERRULED.

Order affirmed as modified. Case stricken from oral argument list on June 25, 2025, and remanded for further proceedings.

Jurisdiction relinquished.

---

[1] We note that the trial court only acknowledged error in sustaining Mr. Korn's first and fourth preliminary objections. *See* Trial Court's Letter to Superior Court, 1/24/25. Upon *de novo* review, we also conclude that the trial court should have overruled his second preliminary objection, contending Liberty Square failed to plead causal damages. Liberty Square pleaded that Mr. Korn's tortious actions caused it over $3,000,000 of damages. *See* First Amended Complaint at 8-9.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>5/30/2025</u>