J-A13006-23

2023 PA Super 144

| | | |
|---|---|---|
| BRIAN EDENFIELD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ECM ENERGY SERVICES, INC., A | : | No. 999 MDA 2022 |
| CORPORATION, ADTRAK 360, LLC, | : | |
| WILLIAM H. HIGGINS,  HARRY A. | : | |
| WAHL AND DAVID PFLEEGOR | : | |

Appeal from the Order Entered June 27, 2022
In the Court of Common Pleas of Lycoming County Civil Division at
No(s):  CV-2021-00041-MP

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY BOWES, J.:                    **FILED: AUGUST 1, 2023**

Brian Edenfield appeals from the June 27, 2022 order, which (1) made final the court's March 16, 2021 order denying his petition to compel inspection of corporate books and records from ECM Energy Services, Inc. ("ECM"), and (2) denied his petition for further and compelled production of corporate books and records from AdTrak 360, LLC ("AdTrak") (collectively, "Appellees").[1]  Mr. Edenfield filed the underlying petitions pursuant to 15 Pa.C.S. § 1508.  We affirm.

This case began on October 15, 2020, when Mr. Edenfield filed a formal demand for ECM and AdTrak to produce their corporate records and books.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Edenfield also named William H. Higgins, Harry A. Wahl, and David Pfleegor, officers and directors of ECM and/or AdTrak, in the petitions to compel.

Three months later, he filed a petition to compel inspection of corporate records, claiming to be a minority shareholder of the two businesses and that they rebuffed or insufficiently complied with his prior informal requests for records and formal October 2020 request. After a hearing, the trial court denied in part and granted in part the petition. Specifically, it denied the petition as to ECM because Mr. Edenfield was not a shareholder when he served ECM with the formal demand, but granted the petition as to AdTrak, limited to records located within Pennsylvania. *See* Order, 3/16/21.

In response, AdTrak retrieved some documents from the cloud-based-service QuickBooks for production to Mr. Edenfield. To do so, an individual within Pennsylvania accessed QuickBooks to procure the documents. On August 27, 2021, Mr. Edenfield filed a petition for additional production of records from AdTrak because he contended that the response had been inadequate. AdTrak, contrarily, averred that it had complied with the court's order and that there were no remaining responsive documents located in Pennsylvania. After argument, the court ordered limited discovery of the location and type of pertinent records.

Upon review of the submitted materials and following additional argument, the trial court distilled the dispute to a single question: whether "electronic records stored in the cloud, without an established physical location in Pennsylvania, [were] located within Pennsylvania for the purposes of Title 15 solely by virtue of being theoretically accessible from Pennsylvania?" *Id*. at 7-8 (cleaned up). The court reasoned that the answer must be no and

- 2 -

denied Mr. Edenfield's petition because it found that it lacked jurisdiction to compel AdTrak to allow inspection of its electronically-stored documents. ***See*** Trial Court Opinion, 6/27/22, at 9-10.

This timely appeal followed. Mr. Edenfield complied with the trial court's Pa.R.A.P. 1925(b) order to file a concise statement. In lieu of a Rule 1925(a) opinion, the trial court referred this Court to the opinion set forth in its June 27, 2022 order. Mr. Edenfield presents the following issues for our review:

1. Did the trial court err in determining that records of ECM Energy Services were not accessible for inspection under Pa.C.S. § 1508?

2. Did the trial court err in determining that electronically-stored business records of a corporation that had a registered office in Pennsylvania, that was doing business in Pennsylvania, and that availed itself of the benefits of doing business in Pennsylvania were not accessible to the corporation's shareholder?

3. Did the trial court err in deciding that a shareholder of a Pennsylvania-registered corporation may only have access to its hard copy business records that are physically located within Pennsylvania?

4. Did the trial court err in deciding that it lacked jurisdiction to require a corporation that is registered in Pennsylvania, was doing business in Pennsylvania, and availed itself of the benefits of doing business in Pennsylvania to provide its business records to its shareholder for inspection?

5. Did the trial court err in ruling that records of a Pennsylvania corporation were not available for inspection by a shareholder because the corporation was not actively doing business when the request was made, even though the corporation remained in good standing?

6. Did the trial court err in determining that electronic records were not "records" as defined under the Shareholder Inspection Act?

Mr. Edenfield's brief at 8-9 (reordered for ease of disposition).

We begin with Mr. Edenfield's contention that the trial court erred in concluding that he lacked standing to compel production of ECM's records as he was no longer a shareholder when he made his request pursuant to § 1508 in October of 2020. In essence, this claim centers on what the term "shareholder" means within the statute. Thus, we review this claim in line with the following principles.

"[O]ur standard of review is *de novo*, and our scope of review is plenary and non-deferential." ***Crown Castle NG E. LLC v. Pennsylvania Pub. Util. Comm'n***, 234 A.3d 665, 674 (Pa. 2020) (citation omitted). In conducting this review, our "duty is to give effect to the legislature's intent and to give effect to all of a statute's provisions." ***Id***. (citation omitted). First, "we consider the statutory language in context and give words and phrases their common and approved usage. When statutory language is clear and unambiguous, courts must give effect to the words of the statute and must not disregard the text to implement its objective." ***Id***. (cleaned up). Only if the statute's language is ambiguous "do we resort to other means of discerning legislative intent." ***Id***. (cleaned up).

With the foregoing in mind, we begin with the full text of the pertinent statute:

**(a) Required records.**--Every business corporation shall keep complete and accurate books and records of account, minutes of the proceedings of the incorporators, shareholders and directors and a share register.

**(b) Right of inspection by a shareholder.**--On demand, in compliance with the requirements in subsection (b.1), a shareholder has the right to examine, in person or by agent or attorney, during the usual hours for business for any proper purpose, the share register, books and records of account, and minutes of, and consents in lieu of meetings by, the incorporators, shareholders and directors and to make copies or extracts therefrom.

**(b.1) Contents and delivery of demand.**--All of the following apply to a demand under subsection (b):

(1) A proper purpose shall mean a purpose reasonably related to the interest of the person as a shareholder.

(2) In every instance where an attorney or other agent is the person who seeks the right of inspection, the demand shall be accompanied by a verified power of attorney or other document in record form that authorizes the attorney or other agent to so act on behalf of the shareholder.

(3) The demand must be:

(i) made in good faith;

(ii) in record form; and

(iii) verified.

(4) The demand must describe with reasonable particularity:

(i) the purpose of the shareholder; and

(ii) the records the shareholder desires to inspect and how the records relate to the purpose of the shareholder.

(5) The demand must be delivered to the corporation:

(i) at its registered office in this Commonwealth;

(ii) at its principal place of business wherever situated;

(iii) in care of the person in charge of an actual business office of the corporation; or

(iv) in care of the secretary of the corporation at the most recent address of the secretary shown in the records of the department.

**(c) Proceedings for the enforcement of inspection by a shareholder.**--If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a shareholder or attorney or other agent acting for the shareholder pursuant to subsection (b) or does not reply to the demand within five business days after the demand has been received, the shareholder may file an action in the court for an order to compel the inspection.  The court is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought.  The court may summarily order the corporation to permit the shareholder to inspect the share register and the other books and records of the corporation and to make copies or extracts therefrom, or the court may order the corporation to furnish to the shareholder a list of its shareholders as of a specific date on condition that the shareholder first pay to the corporation the reasonable cost of obtaining and furnishing the list and on such other conditions as the court deems appropriate.

**(c.1) Burden of proof.**--Where a shareholder has complied with the provisions of this section respecting the form and manner of making demand for inspection and the shareholder seeks to inspect:

(1) the share register or list of shareholders of the corporation, the burden of proof shall be upon the corporation to establish that the inspection he seeks is for an improper purpose; or

(2) the books and records of the corporation, other than the share register or list of shareholders, the burden of proof

shall be upon the shareholder to establish that the inspection the shareholder seeks is for a proper purpose.

**(c.2) Available relief.**--The court may, in its discretion, prescribe any limitations or conditions with reference to the inspection or award such other or further relief as the court deems just and proper. The court may order books, documents and records, pertinent extracts therefrom, or duly authenticated copies thereof, to be brought into this Commonwealth and kept in this Commonwealth upon such terms and conditions as the order may prescribe.

**(c.3) Right to bylaws.**--Every shareholder shall have the right to receive, promptly after demand and without charge, a copy in record form of the currently effective text of the bylaws. If the corporation does not provide a shareholder with a copy of the bylaws as required by this subsection, the shareholder may file an action in the court for an order to compel the production. The court shall summarily order the corporation to provide a copy of the bylaws unless the corporation establishes that the person seeking the bylaws is not a shareholder.

**(d) Certain provisions of articles ineffective.**--This section may not be relaxed by any provision of the articles.

**(e) Reasonable restrictions permitted.**--The corporation may impose reasonable restrictions and conditions on access to and use of information to be furnished under this section, including designating information confidential and imposing nondisclosure and safeguarding obligations on the recipient. In a dispute concerning the reasonableness of a restriction, condition or obligation under this subsection, the corporation has the burden of proving reasonableness.

**(f) Cross references.**--See sections 107 (relating to form of records), 1512 (relating to informational rights of a director), 1763(c) (relating to certification by nominee) and 2511 (relating to financial reports to shareholders) and 42 Pa.C.S. § 2503(7) and (9) (relating to right of participants to receive counsel fees).

15 Pa.C.S. § 1508.

"Shareholder" is not defined within § 1508. However, the 2022 committee comment directs us to § 1103 of the Business Corporation Law of 1988 for a definition of "shareholder":

> **"Shareholder."** A record holder or record owner of shares of a corporation, including a subscriber to shares. The term, when used in relation to the taking of corporate action, includes the proxy of a shareholder. If and to the extent the articles confer rights of shareholders upon holders of obligations of the corporation or governmental or other entities pursuant to any provision of this subpart or other provision of law, the term shall be construed to include those holders and governmental or other entities.

15 Pa.C.S. § 1103.

In concluding that Mr. Edenfield lacked standing, the trial court noted that he "concededly no longer owned any ECM stock at the time he served the verified demand upon ECM." Order, 3/16/21, at 2. Applying what it termed a "natural reading" of the language of § 1508(b), the court concluded that Mr. Edenfield was "not a shareholder as provided for in section 1508(b) and lack[ed] standing to enforce the statute against ECM." *Id*. at 2-3.

Mr. Edenfield does not contest the fact that he no longer held any shares in ECM at the time he made his formal request in October 2020. *See* Mr. Edenfield's brief at 23. Rather, he contends that "[t]he language of 15 Pa.C.S. § 1508 is plain and unambiguous and does not define shareholders as current shareholders." *Id*. at 24. In his mind, because "[t]he clear language of the statute does not expressly exclude former shareholders from its reach, and no Pennsylvania cases support the trial court's finding that Mr. Edenfield

cannot maintain a 15 Pa.C.S. § 1508 action against ECM[,]" the trial court erred in concluding that the statute did not encompass Mr. Edenfield as a former shareholder. *Id*. at 23.

We cannot countenance Mr. Edenfield's interpretation. As noted, "shareholder" is defined as a "record owner of shares of a corporation[.]" 15 Pa.C.S. § 1103. It is undisputed that Mr. Edenfield owned no shares of ECM in October 2020, when he made his formal demand. As he was not a "record owner of shares" of ECM, he consequently was not a shareholder. Upon review, our reading of the statute comports with that of the trial court. Stated simply, the plain language of §§ 1103 and 1508 refer only to current shareholders, and do not include former shareholders. Based on the foregoing, the trial court properly concluded that Mr. Edenfield lacked standing to compel production of ECM's records pursuant to § 1508. Thus, as to ECM, Mr. Edenfield is not entitled to relief.

Mr. Edenfield's remaining claims challenge the trial court's denial of his petition to compel the production of additional records from AdTrak based upon the court's conclusion that it lacked jurisdiction.[2] "[A]s a pure question

_____

[2] We note with disapproval that Mr. Edenfield listed five issues in the statement of questions pertaining to AdTrak, but only separated his argument as to AdTrak into three sections, in contravention of Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail.") and 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head *(Footnote Continued Next Page)*

- 9 -

of law, the standard of review in determining whether a court has subject matter jurisdiction is *de novo* and the scope of review is plenary." ***Mazur v. Trinity Area Sch. Dist.***, 961 A.2d 96, 101 (Pa. 2008) (cleaned up).

By way of background, AdTrak is a dormant, Delaware limited liability company that previously held offices in Williamsport, Pennsylvania. ***See*** Deposition of William H. Higgins, 1/5/22, at 88. In February 2018, AdTrak ceased its operations in Pennsylvania, closed its Pennsylvania office, and destroyed all physical records stored in Pennsylvania. ***Id***. at 90-91. All relevant financial information was stored electronically in QuickBooks. ***Id***. at 94-95. Over two years later, Mr. Edenfield formally demanded inspection of AdTrak's corporate records and books pursuant to § 1508. At the time Mr. Edenfield made his demand in October 2020, a Pennsylvania accounting firm had access to AdTrak's QuickBooks account for purposes of filing taxes. ***See*** Affidavit of Beau Vincenzes, 1/12/22. In response to the court's March 16, 2021 order, AdTrak provided Pennsylvania resident and ECM Chief Executive Officer, Mike Caseman, AdTrak's credentials to QuickBooks for him to assist in procuring what AdTrak deemed to be the responsive documents. ***See*** Deposition of William H. Higgins, 1/5/22, at 96-97. As of April 2021, AdTrak

---

of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.").

no longer utilized the accounting firm and it lost access to AdTrak's electronic records. *See* Affidavit of Beau Vincenzes, 1/12/22.

Our Supreme Court has held that "[w]hile our courts will not take jurisdiction for the purpose of regulating or interfering with the internal affairs of a foreign corporation, it is equally well settled that the granting of a right to inspect a foreign corporation's books and records, which are within the jurisdiction, does not so offend." *Donna v. Abbotts Dairies, Inc.*, 161 A.2d 13, 16 (Pa. 1960) (*per curiam*) (citing *Kahn v. American Cone & Pretzel Co.*, 74 A.2d 160 (Pa. 1950)).

Mr. Edenfield contends that the trial court erred in concluding that the "electronic records of a corporation doing business in Pennsylvania cannot be compelled for production under 15 Pa. C.S. § 1508 if [the hard copies] are not also located within the Commonwealth." Mr. Edenfield's brief at 20. He argues that he "established that AdTrak's electronic records are located in Pennsylvania" because two Pennsylvania residents accessed AdTrak's QuickBooks account in Pennsylvania to obtain documents in compliance with the court's March 16, 2021 order. *See id*. at 17. In so arguing, he presumes that AdTrak is doing business in Pennsylvania.

On the other hand, AdTrak maintains that "[a] company once doing business in Pennsylvania but has since departed should not be forever subject to 15 Pa.C.S. § 1508 and thereby required to bring books or records back into this Commonwealth." Appellees' brief at 18. According to AdTrak, it ceased

business operations in Pennsylvania on February 18, 2018, and within sixty days permanently closed its Pennsylvania office and destroyed or discarded all records stored in Pennsylvania. *Id*. at 19. All of this occurred before Mr. Edenfield served the inspection demand. *Id*.

Upon review of the discovery and arguments of the parties, the trial court agreed with AdTrak that it was neither operating nor storing records in Pennsylvania. Despite AdTrak previously maintaining a principal place of business in Pennsylvania and authorizing access to some of its electronic records to individuals located within the Commonwealth, the trial court concluded that it lacked jurisdiction to compel AdTrak to allow inspection of its electronically-stored documents. Trial Court Opinion, 6/27/22, at 9-10.

> The fact that the documents are in theory accessible within Pennsylvania, . . . is clearly insufficient by itself to put the documents within the court's jurisdiction and render them located within Pennsylvania for the purposes of Title 15. If this were sufficient, then any of the Commonwealth's courts of common pleas would have jurisdiction to compel any business organization – no matter where it is domiciled or whether it conducts business in Pennsylvania – to turn over all its share register, books and records of account, and records of the proceedings of the incorporators, shareholders and directors so long as there records are theoretically accessible from within the Commonwealth.

*Id*. at 9 (cleaned up).

The court elaborated as follows:

> There is no doubt that the advent of electronic recordkeeping changed the necessary calculus of shareholders' rights to inspect corporate records, inasmuch as it is possible that a corporation's records will have no physical location and can be remotely accessed from anywhere. Ultimately, though, physical location is a proxy for the truly essential legal requirement: jurisdiction. A

- 12 -

corporation that is incorporated in Pennsylvania, or a foreign corporation that keeps its principal place of business in Pennsylvania, will very likely be unable to resist a shareholder's request to inspect its documents even if they are stored in the cloud. This is because, to the extent these businesses have voluntarily availed themselves of the benefits of doing business in Pennsylvania, a court order compelling them to provide their records for inspection will not offend concepts of jurisdiction. . . . Here, AdTrak has only conducted sparse business in Pennsylvania over the past four years, and only a small portion of its records have been accessed and utilized in the Commonwealth. [Mr. Edenfield] has been provided those records. In order to compel AdTrak to submit its remaining corporate records to [Mr. Edenfield] for inspection, the court would need to reach into another state – be it Texas, where [Mr.] Higgins resides; Delaware, where AdTrak is incorporated; or some other state where QuickBooks locates its cloud servers – to cause AdTrak to take action.

*Id*. at 11 (cleaned up).

We are persuaded by the trial court's reasoning and the certified record bears out its factual findings. Since AdTrak ceased its business connections to Pennsylvania over two years before Mr. Edenfield demanded inspection pursuant to § 1508, he was only entitled to inspection of any records located in Pennsylvania. With regard to documents stored virtually, the trial court did not err in concluding that it lacked jurisdiction to compel AdTrak to access those records, as AdTrak was not incorporated in Pennsylvania, did not keep a principal place of business in Pennsylvania, and was not registered to conduct business in Pennsylvania. Plainly put, there were insufficient ties to permit the court to compel a foreign business to produce its records pursuant to § 1508. We highlight that the court did not conclude the records were inherently out of reach to Mr. Edenfield because they were stored virtually,

- 13 -

but rather, the cloud-based records were not subject to inspection in Pennsylvania because the business lacked a sufficient link to Pennsylvania. Concluding otherwise, as astutely noted by the court, would permit courts to compel any business utilizing QuickBooks or like services to produce records in Pennsylvania despite having no other connection to our Commonwealth, a result which is not contemplated by § 1508 or our jurisprudence.

Based on the foregoing, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/01/2023