IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Deborah R. Hargy Malloy and<br>Edward C. Malloy,<br>               Appellants | : <br> : <br> : <br> : <br> : | |
| v. | : | No. 971 C.D. 2022 |
| | : | |
| Hon. H. Geoffrey Moulton, Jr. | : | |
| | | |
| Deborah R. Hargy Malloy and<br>Edward C. Malloy,<br>               Appellants | : <br> : <br> : <br> : <br> : | |
| v. | : | No. 1342 C.D. 2022 |
| | : | |
| H. Geoffrey Moulton, Jr. | : | |
| | | |
| Deborah R. Hargy Malloy and<br>Edward C. Malloy,<br>               Appellants | : <br> : <br> : <br> : <br> : | |
| v. | : | No. 133 C.D. 2023 |
| | : | |
| H. Geoffrey Moulton, Jr. | : | Submitted: February 6, 2024 |

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                        FILED:  May 3, 2024

In these consolidated appeals, Appellants Deborah R. Hargy Malloy and Edward C. Malloy (collectively Appellants) challenge three orders issued by the Court of Common Pleas of Delaware County (Common Pleas). The first of these orders, issued by Common Pleas on December 28, 2021, sustained Appellee Hon.

H. Geoffrey Moulton, Jr.'s (Appellee)[1] preliminary objections to Appellants' "Amended (Fifth) Complaint" (Fifth Amended Complaint) and dismissed that action with prejudice. The second of these orders, issued by Common Pleas on June 28, 2022, denied Appellants' Petition to Recuse Judge. The third order, issued by Common Pleas on September 19, 2022, denied as moot Appellants' Petition to Transfer Case. In addition, Appellants filed a "Motion to Transfer to the Supreme Court of Pennsylvania" (Motion to Transfer) with this Court on March 12, 2024, through which they request that we transfer this matter to our Supreme Court. After thorough review, we vacate the first order, dismiss as moot Appellants' challenges to the second and third orders, transfer Appellants' action to the Pennsylvania Supreme Court on jurisdictional grounds, and dismiss as moot the Motion to Transfer.

## I. Background

On April 16, 2021, Appellants filed a mandamus action against Appellee in Common Pleas, to which Appellee responded by filing preliminary objections. Thereafter, the parties engaged in a repetitious dance of sorts, whereby Appellants would file a new, slightly revised version of their complaint, thereby rendering moot Appellee's existing preliminary objections, only to have Appellee respond by submitting a new round of preliminary objections. Eventually, Appellants filed their Fifth Amended Complaint, which is the subject of these appeals, on October 4, 2021. Therein, Appellants semi-coherently asserted that two Common Pleas judges, the

---

[1] Appellee was the Administrative Office of Pennsylvania Courts' (AOPC) Court Administrator at the time Appellants filed suit against him and retired from this role on September 30, 2023. *See Pennsylvania Supreme Court Announces Upcoming Retirement of State Court Administrator Geoff Moulton*, THE UNIFIED JUD. SYS. OF PA. (Apr. 25, 2023), https://www.pacourts.us/news-and-statistics/news/news-detail/1134/pennsylvania-supreme-court-announces-upcoming-retirement-of-state-court-administrator-geoff-moulton.

Honorable Barry C. Dozer and the Honorable G. Michael Green, had repeatedly violated Pennsylvania Rule of Judicial Administration 703 by failing to file reports with Appellee that accurately listed all matters that had both been assigned to those judges and, post-assignment, remained undecided for 90 or more days. Reproduced Record (R.R.) at 5a-14a; *see* Pa. R.J.A. 703. Accordingly, Appellants sought mandamus relief, in the form of an order directing Appellee to act in accordance with his statutory duties by reporting Judge Dozer's and Judge Green's alleged violations of Rule 703 to the Pennsylvania Judicial Conduct Board (JCB). R.R. at 14a-15a.

While this was taking place, Appellants also submitted two petitions that are relevant to the appeals currently before us. Through the first, filed on July 26, 2021, Appellants asserted that Common Pleas did not have jurisdiction over this matter and consequently requested that their lawsuit "be transferred to the correct court." *Id.* at 83a-92a. Through the second, filed on October 21, 2021, Appellants sought to have the Honorable Senior Judge Robert J. Shenkin, a Court of Common Pleas of Chester County judge who had been assigned to preside over Appellants' case, recuse himself from handling this matter, on the basis that Judge Shenkin had shown bias or partiality by barring Appellants from filing a sixth amended complaint. *Id.* at 99a-126a.

On October 22, 2021, Appellee responded to the Fifth Amended Complaint via preliminary objections. Specifically, Appellee argued that Appellants' action should be dismissed for several reasons. First, Common Pleas lacked jurisdiction over the matter, due to the Supreme Court's inherent supervisory authority over our Commonwealth's judiciary. *Id.* at 34a-35a. Second, Appellants had failed to articulate a substantial, direct, and immediate interest in ensuring that Appellee

reported Judges Dozer and Green to the JCB and, thus, had not established that they had standing in this matter. *Id.* at 35a-38a. Third, Appellants had not articulated a viable mandamus claim, because they had an alternate, entirely viable form of relief available to them, in that they could themselves report Judge Dozer's and Judge Green's alleged noncompliance with the Rules of Judicial Administration to the JCB. Finally, Appellee asserted that he was shielded from Appellants' action by virtue of sovereign immunity, as he was a Commonwealth official acting within the scope of his professional duties. *Id.* at 20a-43a.

On December 28, 2021, Common Pleas sustained Appellee's preliminary objections, dismissed Appellants' Fifth Amended Complaint with prejudice, and precluded Appellants from filing a sixth amended complaint. *Id.* at 133a. Thereafter, on June 28, 2022, and September 19, 2022, Common Pleas respectively denied Appellants' Petition to Recuse Judge and denied as moot Appellants' Petition to Transfer Case. *Id.* at 131a-32a. Appellants filed timely appeals regarding each of these rulings, which were subsequently consolidated for purposes of disposition by this Court.

## II. Discussion

Under normal circumstances, we would now address the merits of Appellants' substantive arguments; however, we are constrained to refrain from doing so, due to Common Pleas' patently erroneous exercise of jurisdiction over this matter. It is beyond cavil that

> [j]urisdiction over the subject matter [of an action] is conferred solely by the Constitution and laws of the Commonwealth. The test for whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs. Thus, as a pure question of law, the standard of review in

4

determining whether a court has subject matter jurisdiction is *de novo* and the scope of review is plenary.

*Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008). Furthermore,

any issue going to the subject matter jurisdiction of a court or administrative tribunal to act in a matter . . . cannot be waived by the parties[,] nor can the parties confer subject matter on a court or tribunal by agreement or stipulation. Since an issue of subject matter jurisdiction is not waivable, it may be raised at any stage of a proceeding by a party, or *sua sponte* by the court or agency.

*Blackwell v. State Ethics Comm'n*, 567 A.2d 630, 636 (Pa. 1989) (internal citations omitted).

Despite the broad language it used in its December 28, 2021 order when ruling upon Appellee's preliminary objections, Common Pleas subsequently made clear that it had sustained those preliminary objections only on the basis of Appellants' purported lack of standing and failure to state a viable mandamus claim (*i.e.*, demurrer). *See* Common Pleas Op., 10/4/22, at 2-3. In other words, Common Pleas did not dispose of Appellee's assertion that the lower tribunal lacked jurisdiction to handle Appellants' action. This omission was legally erroneous, as the existence of proper jurisdiction over a given matter is obviously a prerequisite for a court to issue all other types of rulings therein. *See Robinson v. Pa. Bd. of Prob. & Parole*, 582 A.2d 857, 860 (Pa. 1990) ("Jurisdiction is the predicate upon which consideration of the merits must rest.").

We will therefore endeavor to remedy Common Pleas' lapse by addressing the issue of subject matter jurisdiction ourselves, by looking to the nature of our Supreme Court's administrative and supervisory powers over our Commonwealth's judicial apparatus. As the Supreme Court has explained:

The [Pennsylvania] Constitution is explicit regarding the breadth of the [Supreme] Court's authority over the Unified Judicial System. In the Supreme Court "shall be

5

reposed the supreme judicial power of the Commonwealth." PA. CONST. art. V, § 2(a). Moreover, in addition to its judicial power, the Supreme Court has "general supervisory and administrative authority over all the courts and [magisterial district judges]. . . ." PA. CONST. art. V, § 10(a). The Judicial Code helps to implement the primacy of the Supreme Court within the Unified Judicial System. *See* 42 Pa. C.S. § 501 (derived from PA. CONST. art. V, § 2). The General Assembly has also recognized that the Court has "[a]ll powers necessary or appropriate in aid of its original and appellate jurisdiction which are agreeable to the usages and principles of law" and any powers vested in it by statute, including the Judicial Code. 42 Pa. C.S. § 502. Section 1701 of the Judicial Code states that the Court has general supervisory and administrative authority over the judicial system and may exercise powers enumerated in subsequent provisions "in aid" of that authority. 42 Pa. C.S. § 1701 (derived from PA. CONST. art. V, § 10(a)). The enumerated powers include authority over "all courts and magisterial district judges" and over "personnel of the system." 42 Pa. C.S. §§ 1723, 1724. Personnel of the system include "judicial officers," among them magisterial district judges. *See* 42 Pa. C.S. § 102 (definitions: personnel of the system, judicial officers, judges).

As part of its administrative responsibility, the Court oversees the daily operations of the entire Unified Judicial System, which provides a broad perspective on how the various parts of the system operate together to ensure access to justice, justice in fact, and the appearance that justice is being administered even-handedly. *See* PA. CONST. art. V, § 10 (judicial administration). One aspect of this responsibility is management of judicial personnel. Thus, for example: (1) the Chief Justice, acting upon requests from the AOPC, may assign additional jurists to temporary judicial service on any court; (2) the Court may certify jurists for senior status, and these jurists may be assigned by the Chief Justice as needed; and (3) the Court approves jurists for assignment or re-assignment to divisions of the courts of common pleas. *See* PA. CONST. art. V, §§ 10(a), 16(c); Pa. R.J.A. [] 701, 702. Judicial

6

leave is monitored by the Supreme Court, and jurists are required to file reports related to the status of cases submitted to them for adjudication. Pa. R.J.A. [] 703, 704. The AOPC records, reviews, and reports to the Supreme Court on matters related to the operation and efficiency of the Unified Judicial System and its component parts; system personnel are expected to cooperate with the AOPC in these respects and any failure to cooperate is referred to the Supreme Court for review. *See* PA. CONST. art. V, § 10(b); Pa. R.J.A. [] 505, 506, 701-704.

Another important facet of judicial administration is the authority to devise rules of procedure governing adjudications before inferior tribunals . . . . *See* PA. CONST. art. V, § 10(c). While the [Court of Judicial Discipline (CJD)] is permitted to devise its own rules of procedure, the CJD is nevertheless bound in its substantive task to take general direction from the Supreme Court, as this Court is responsible for the substance of the codes of conduct that govern Pennsylvania jurists, which the CJD enforces, and our interpretation of those codes controls. *See* PA. CONST. art. V, § 10(c); *see also* Pa. Code of Jud. Conduct Canon[s 1-3]; Pa. St. Mag. Dist. J. Rule[s 101-1211]; [*In re Carney*, 9 A.3d 490 (Pa. 2013)]. Additionally, the Court regulates the conduct of jurists via the Rules of Judicial Administration.

. . . .

In addition to its general powers of adjudication, supervision and administration, the Supreme Court also has "the power generally to minister justice to all persons and to exercise the powers of the court, as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, could or might do on May 22, 1722." 42 Pa. C.S. § 502 (derived from Judiciary Act of May 22, 1722, 1 Smith's Law 131). The Judicial Code recognizes that these additional powers are vested in the Supreme Court by the Constitution of Pennsylvania. *Id.* . . .

To aid in the exercise of these powers, the Court has such jurisdiction as "shall be provided by law." PA. CONST. art. V, § 2(c). [For example,] Section 721 of the Judicial Code

enumerates the types of cases over which the Court has original jurisdiction: *habeas corpus*, mandamus or prohibition to courts of inferior jurisdiction, and *quo warranto* as to any officer of statewide jurisdiction. 42 Pa. C.S. § 721. . . . Section 726 addresses the Court's extraordinary jurisdiction to take cognizance, *sua sponte* or upon petition of a party, of any matter pending before an inferior tribunal "involving an issue of immediate public importance." 42 Pa. C.S. § 726. In addition, the schedule to [a]rticle V of the Constitution continues post-ratification the jurisdiction vested in the Supreme Court in 1968—such as the jurisdiction of the King's Bench. PA. CONST. SCHED. art. V, § 1; *see, e.g.*, *City of Philadelphia v. Int'l Ass'n of Firefighters, Local 22*, . . . 999 A.2d 555 ([Pa.] 2010) (Supreme Court exercised King's Bench jurisdiction to review arbitration award upon writ of certiorari, where right of appeal was statutorily prohibited).

. . . .

[T]he [Supreme] Court's supervisory responsibilities only start at relatively mundane tasks [such as those] relating to temporary assignments of judges to fill vacancies on the bench, priority of commission, or judicial assignments to divisions within a trial court, and related adjudicatory obligations. *See, e.g.*, PA. CONST. art. V, §[] 10(a), (e). . . . But, the duties of the [Supreme] Court atop the Unified Judicial System transcend these ministerial tasks. The Supreme Court's principal obligations are to conscientiously guard the fairness and probity of the judicial process and the dignity, integrity, and authority of the judicial system, all for the protection of the citizens of this Commonwealth.

. . . .

[Thus, the essence of t]he Supreme Court's supervisory power over the Unified Judicial System . . . implicates a dual authority: (1) over personnel of the system, among them jurists; and (2) over inferior tribunals[.]

*In re Bruno*, 101 A.3d 635, 663-65, 75, 78 (Pa. 2014).

8

Here, Appellants allege that two jurists have failed to properly comply with the reporting requirements the Supreme Court has imposed upon them through the Rules of Judicial Administration, and consequently seek to compel Appellee, the Chief Administrator of the AOPC (who was appointed to his role by the Supreme Court itself),[2] to report those jurists to the JCB for their alleged noncompliance. In other words, Appellants' mandamus claim directly implicates the Supreme Court's supervisory and administrative responsibilities. Therefore, their lawsuit falls squarely within the scope of the Supreme Court's original jurisdiction, rather than that of Common Pleas.[3] Accordingly, Common Pleas should have transferred this matter to the Supreme Court, and committed legal error by both ruling upon the merits of Appellee's non-jurisdictional preliminary objections and issuing orders pertaining to Appellants' aforementioned petitions.

---

[2] *See* 42 Pa. C.S. § 1901 ("The Supreme Court shall appoint and may remove a Court Administrator of Pennsylvania.").

[3] Or, for that matter, within the original jurisdiction of this Court. *See* 42 Pa. C.S. § 761 (delimiting the bounds of the Commonwealth Court's jurisdictional authority); *cf. Bruno*, 101 A.3d 635 (Supreme Court had original jurisdiction over interim disciplinary action against a federally indicted traffic court judge); *Begandy v. Clerk of Cts. of Allegheny Cnty.* (Pa. Cmwlth., No. 443 M.D. 2018, filed Mar. 29, 2019), 2019 WL 1422668 (Supreme Court had original jurisdiction over mandamus action in which petitioner alleged that a clerk of courts and a court administrator, both of whom worked for a court of common pleas, had not handled his record correction request in compliance with the Unified Judicial System's written policies); *Guarrasi v. Scott*, 25 A.3d 394 (Pa. Cmwlth. 2011) (Supreme Court had original jurisdiction over action through which petitioner sought to compel all judges from a specific court of common pleas to recuse themselves from presiding over his case); *Leiber v. Cnty. of Allegheny*, 654 A.2d 11 (Pa. Cmwlth. 1994) (Supreme Court had original jurisdiction over mandamus action against a district justice, through which an elected constable sought payment for services rendered). Though *Begandy* was unreported, we reference it as persuasive authority. *See* Section 414(a) of the Internal Operating Procedures of the Commonwealth Court of Pennsylvania, 210 Pa. Code § 69.414(a) (unreported Commonwealth Court opinions issued after January 15, 2008, may be cited for their persuasive value).

### III. Conclusion

In light of the foregoing analysis, we vacate Common Pleas' December 28, 2021 order and transfer Appellants' lawsuit to our Supreme Court on jurisdictional grounds. *Stedman v. Lancaster Cnty. Bd. of Comm'rs*, 221 A.3d 747, 760-61 (Pa. Cmwlth. 2019); 42 Pa. C.S. § 5103(a); Pa. R.A.P. 751. Additionally, as this transfer has the ancillary effect of both relieving Judge Shenkin of responsibility over the case and affords Appellants the relief they sought via their Petition to Transfer Case, we dismiss Appellants' appeals regarding Common Pleas' June 28, 2022 and September 19, 2022 orders as moot. Finally, as our disposition of these appeals affords Appellants the precise relief they sought through their Motion to Transfer, we dismiss as moot that motion.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah R. Hargy Malloy and   :
Edward C. Malloy,   :
      Appellants   :
  :
  :
      v.   :  No. 971 C.D. 2022
  :
Hon. H. Geoffrey Moulton, Jr.   :

Deborah R. Hargy Malloy and   :
Edward C. Malloy,   :
      Appellants   :
  :
  :
      v.   :  No. 1342 C.D. 2022
  :
H. Geoffrey Moulton, Jr.   :

Deborah R. Hargy Malloy and   :
Edward C. Malloy,   :
      Appellants   :
  :
  :
      v.   :  No. 133 C.D. 2023
  :
H. Geoffrey Moulton, Jr.   :

**PER CURIAM**

## O R D E R

AND NOW, this 3rd day of May, 2024, it is HEREBY ORDERED:

1. The Court of Common Pleas of Delaware County's (Common Pleas) December 28, 2021 order is VACATED;

2. Appellants Deborah R. Hargy Malloy and Edward C. Malloy's (Appellants) lawsuit, which they originally filed in Common Pleas, is

TRANSFERRED to the Supreme Court of Pennsylvania on jurisdictional grounds;

3. Appellants' appeals regarding Common Pleas' June 28, 2022 and September 19, 2022 orders are DISMISSED AS MOOT; and

4. Appellants' "Motion to Transfer to the Supreme Court of Pennsylvania" is DISMISSED AS MOOT.