IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The Enclave Community Services Association, Inc. and The Borough of Fox Chapel | : | **CASES CONSOLIDATED** |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| James R. Katz, d/b/a Pittsburgh Land Company | : | |
| | : | |
| v. | : | |
| | : | |
| Susan Katz | : | |
| | : | |
| James R. Katz, d/b/a Pittsburgh Land Company | : | |
| | : | |
| v. | : | |
| | : | |
| The Enclave Community Services Association, Inc., a Pennsylvania nonprofit corporation, Jay W. Cleveland, Jr., Francis W. Daily, Mary Winston, Avrum Levicoff, Esquire, and Iyer Vish | : | |
| | : | |
| Appeal of: James R. Katz, d/b/a Pittsburgh Land Company | : | Nos. 924 and 1383 C.D. 2023 |
| | : | Argued: November 6, 2025 |

BEFORE:  HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  January 22, 2026

James R. Katz, d/b/a Pittsburgh Land Company (Unit Owner), has appealed a judgment entered by the Court of Common Pleas of Allegheny County (trial court) against him and in favor of The Enclave Community Services Association, Inc. (the Association).[1] Specifically, the trial court ordered Unit Owner to pay damages and attorney's fees to the Association on Count II of its civil action, which sought to collect assessments alleged to be owed by Unit Owner. Because the Association failed to join Unit Owner's wife as an indispensable party to Count II, we conclude that the trial court lacked jurisdiction.

## Background

The Enclave, located in Fox Chapel Borough, was created in 1990 by Unit Owner, doing business as Pittsburgh Land Company. Consisting of 41 lots, the Enclave was organized under the Uniform Planned Community Act (Planned Community Act).[2] Notes of Testimony, 8/6/2014, at 36 (N.T. __); Reproduced Record at 459a (R.R. __). As developer of the Enclave, Unit Owner recorded a declaration (Declaration) to govern the planned community. Article I, Section 10 of the Declaration identifies Unit Owner as the "Declarant." Declaration, Article I, §10; R.R. 56a. During the initial period of the Enclave's development, the Declaration vested Unit Owner with control (Control Period) of the Association. Declaration, Article III, §2(b); R.R. 61a. Unit Owner appointed two of the three members of the Association's board of directors that served during the Control Period.

---

[1] The Borough of Fox Chapel (Borough) intervened in this dispute to resolve claims it held against Unit Owner concerning breached development agreements. As those claims have been settled and discontinued, *see* Trial Court Order, 1/12/2018, the Borough is not involved in this appeal. On January 20, 2022, the trial court denied the Borough's claim for attorney's fees, but that issue is not before this Court.

[2] 68 Pa. C.S. §§5101-5414.

The Declaration gives the Association, a non-profit corporation, the responsibility to manage and control the common areas and improvements within the Enclave. Declaration, Article IV, §1; R.R. 62a-63a. To that end, the Association assesses each unit owner a *pro rata* share of the Enclave's annual operating and maintenance expenses, and it requires the unit owners to pay the assessments. The Declaration defines "owner" as "one (1) or more persons *who hold the record title to any Lot*" in the community. Declaration, Article I, §18; R.R. 58a (emphasis added). The Declaration creates several types of assessments. One type, the base assessment, funds "Common Expenses," which are the "actual and estimated expenses incurred by the Association for the general benefit of all Owners[.]" Declaration, Article I, §8; R.R. 56a. The Declaration excludes "any expenses incurred during the [] Control Period for initial development or installation of infrastructure" from the base assessment. *Id*.

The Declaration provides that "[n]o Owner may waive or otherwise exempt himself from liability for the assessments" and that the "obligation to pay assessments is a separate and independent covenant on the part of each Owner." Declaration, Article X, §1; R.R. 74a. However, the Declaration also provides that as long as Unit Owner, as Declarant, has the authority "unilaterally to subject additional property to this Declaration," he can elect each year to "pay the Association *the difference between the amount of assessments collected on all other Lots subject to assessment* and the amount of actual expenditures required to operate the Association during the fiscal year." Declaration, Article X, §1; R.R. 75a (emphasis added). Base assessments are calculated "by dividing the total budgeted [c]ommon [e]xpenses, including reserves, by the number of Lots then subject to the provisions of this Declaration." Declaration, Article X, §2; R.R. 75a. Owners who

3

fail to pay their assessments on time are personally liable for the unpaid assessments, as well as "interest," "late charges, costs, and reasonable attorney's fees." Declaration, Article X, §1; R.R. 74a. The non-payment of an assessment can also trigger a lien on the lot on which an assessment was levied.[3]

Throughout the Control Period, from 2004 through 2010,[4] Unit Owner oversaw the issuance and collection of assessments imposed by the Association's board of directors. During that period, the Association calculated its assessments by dividing the total estimated expenses for any given year by the number of sold lots. Lots in the Enclave unsold by Unit Owner were not included. For the fiscal year 2004, when Unit Owner owned 12 of the 41 lots, the common expenses for the Enclave were $30,579.50. For fiscal years 2006, 2007, and 2009, when Unit Owner owned 11 of the 41 lots, the common expenses were $44,997.50, $46,255.50, and $41,237.00, respectively. No assessments were imposed in fiscal years 2005 and 2008.

On August 30, 2010, during the last months of the Control Period, Unit Owner, in his capacity as Declarant, used the Association's bank account to write a check to himself. Unit Owner claimed that Kirk Burkley, Esquire, the court-appointed receiver of the Pittsburgh Land Company in Unit Owner's divorce proceeding, had used Unit Owner's personal account to pay Association expenses, for which Unit Owner was owed reimbursement.

_____

[3] Under the Planned Community Act, "[t]he association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due." 68 Pa.C.S. §5315(a).

[4] The fiscal years at issue commenced on April 1 and terminated on March 31 of the following year.

On December 31, 2010, the Control Period expired, and the owners in the Enclave elected a new board of directors. Unit Owner was elected as one of the Association's six directors.

On April 6, 2011, when Unit Owner refused to hand over the Association's checkbook and bank records to the new board of directors, the Association filed a six-count civil complaint against Unit Owner seeking damages and equitable relief.[5] Following the disposition of preliminary objections, the Association filed a second amended complaint with five counts. Count I is a recital of facts and does not present a legal claim. Count II seeks damages in the amount of $72,896.60, plus interest, for Unit Owner's alleged non-payment of assessments for the years 2004, 2006, 2007, and 2009. Count III seeks damages for breach of a development agreement entered into with the Borough of Fox Chapel. Count IV seeks compensatory and punitive damages for fraudulent misrepresentation of the assessment amounts. Count V seeks damages in the amount of $2,987, plus interest, for misappropriation of the Association's funds. Finally, Count VI seeks damages for breach of fiduciary duty.

On April 13, 2011, Unit Owner used the Association's bank account to write a check in the amount of $1,000 payable to Unit Owner's law firm to fund a lawsuit against the Association, which was filed on April 26, 2011. That complaint seeks a declaratory judgment that Unit Owner's lots were exempt from assessments from 1990 until 2010 and that under Article XIII, Section 3 of the Declaration, the

---

[5] The Association sought injunctive relief in the nature of an order directing Unit Owner to turn over books and records, including the checkbook and bank records, to the Association (Count I); damages for Unit Owner's failure to pay assessments (Count II); damages for breach of a development agreement entered into with the Borough (Count III); damages for fraudulently misrepresenting to the homeowners how much they owed on their assessments (Count IV); damages for the misappropriation of the Association's funds (Count V); and damages for breach of fiduciary duty (Count VI).

Association was obligated to defend and indemnify him in the Association's lawsuit against him.

On March 12, 2013, the trial court denied Unit Owner's motion for summary judgment, concluding that all his unsold lots were subject to assessments as a matter of law beginning in 2004. Thereafter, the trial court consolidated the lawsuits of the Association and Unit Owner.

On May 3, 2013, Unit Owner filed a third-party complaint to add Susan L. Katz, his then wife (Ex-Wife), as a third-party defendant. The complaint alleged that Ex-Wife "is the owner of unit/Lot Nos. 222, 304, 307, 308, 312, and 313" (the Six Lots) in the Enclave. R.R. 256a. Ex-Wife filed an answer and new matter, asserting that, on November 26, 2012, she had entered into a settlement agreement with the Association to satisfy her debt to the Association relative to the Six Lots. Consequently, she could not be "solely, jointly, or severally liable to [the Association] nor liable over to [Unit Owner] for any judgment [the Association] may obtain against him." Ex-Wife New Matter at 5, ¶21(a); R.R. 292a. The settlement agreement provides, in pertinent part, as follows:

> 1. [Ex-Wife] shall pay the [Association] the amount of $7,680.00 at the closing of the sale of Lot 222 to Gary and Daniela Folino, or their assigns.
>
> . . . .
>
> 3. The [Association] shall assert no claim on any of [Ex-Wife's] other Lots for any assessments assessed for periods prior to January 1, 2013, any such assessment or right to assessments being paid in full by this Settlement Agreement. At such time as the remaining Lots are sold, the [Association] will provide a re-sale certificate for each in the form prescribed by 68 Pa. C.S. §5407 which confirms or reflects that there are no assessments owed, due and unpaid on said Lot(s) for 2012 and all earlier years.

6

4. Other than for any Lots sold prior to January 1, 2013, [Ex-Wife] will be liable for all assessments on the Lots assessed for periods from and after the period commencing January 1, 2013 until such date as each Lot is sold.

5. [The Association] releases [Ex-Wife] only from any and all liability for any and all claims asserted in its action against [Unit Owner] in Case No. GD-11-006476. This agreement shall not otherwise affect the liability of [Unit Owner] to the [Association] for assessments or any other amounts. To the extent, if any, that the Court in said action or any other Court of competent jurisdiction in any other action holds [Ex-Wife] to be liable, directly or indirectly, to the [Association] for the amount of any judgment it may obtain against [Unit Owner] in any capacity, the [Association] agrees to accept the payment made hereunder as full and final satisfaction of any liability of [Ex-Wife] to the [Association] (other than for amounts due under paragraph 4, if any), and covenants to bring no suit of any sort against [Ex-Wife] arising out of such liability.

Settlement Agreement ¶¶1, 3-5; R.R. 314a-15a. In the recitals, the agreement states that the lots in the Enclave "have been held to be marital property" in the parties' divorce proceedings.[6] Settlement Agreement ¶1; R.R. 314a-15a. Separately, in her answer, Ex-Wife admitted that although she had sold Lot 222 in December 2012, she remained "the title owner" of Lots 304, 307, 308, 312, and 313. Ex-Wife Answer at 4, ¶13; R.R. 291a. She further admitted that the parties were equally responsible for the development costs for lots 307, 308, 312, and 313.

On February 6, 2014, the trial court granted Unit Owner's motion for partial summary judgment, dismissing Count III of the Association's second amended complaint. On August 6, 2014, the consolidated cases proceeded to a two-

---

[6] The final divorce decree was entered December 17, 2015. *See Katz v. Katz* (Pa. Super., No. 123 WDA 2015, filed November 3, 2016).

day, non-jury trial on Counts II and V, at which the parties presented evidence.[7] On September 16, 2022, the trial court entered its verdict, awarding the Association $83,713.18 in damages on Count II (unpaid assessments) and $5,071.24 in damages on Count V (misappropriation).

Unit Owner filed a timely post-trial motion. On December 15, 2022, the Association, as the prevailing party, petitioned the court for reasonable attorney's fees in the amount of $109,392.89. Following two separate hearings, the trial court denied Unit Owner's post-trial motion and awarded the Association $95,956.89 in attorney's fees. Unit Owner appealed to the Pennsylvania Superior Court,[8] which transferred the appeal to this Court.[9]

## Appeal

Unit Owner's appeal is limited to the trial court's judgment on Count II, which awarded the Association $83,713.18 in damages and attorney's fees in the amount of $109,392.89.[10] Unit Owner does not challenge the award of damages on

---

[7] At the start of trial, the parties limited the scope of the issues to be tried to Counts II and V. Counts IV and VI, although not formally stricken by the trial court, were withdrawn.

[8] The Association filed an application to strike Unit Owner's reply brief and exhibits A and B attached thereto on the ground that they contain extra-record evidence. It is well settled that this Court may not consider evidence that is not part of the certified record on appeal. *See Umedman v. Unemployment Compensation Board of Review*, 52 A.3d 558, 564 (Pa. Cmwlth. 2012). *See also* Pa.R.A.P. 1921. Because documents contained in exhibits A and B are not in the certified record, we will disregard them and will not consider any references to them in Unit Owner's reply brief. Accordingly, we grant the Association's application to the extent it seeks to strike exhibits A and B. In all other respects, the application is denied.

[9] Unit Owner filed an additional notice of appeal from the judgment with respect to the trial court's denial of his declaratory judgment action. On October 18, 2024, this Court consolidated both appeals.

[10] This Court's standard of review is as follows:

In a bench trial, the trial judge acts as fact-finder and has the authority to make credibility determinations and to resolve conflicts in evidence. Consequently, the trial judge's findings made after a bench trial must be given the same weight and effect as a jury verdict and will not be disturbed on appeal unless they are not

Count V. On appeal, Unit Owner presents five issues for this Court's review, which we have reorganized for purposes of this opinion:

[1]. Whether the trial court lacked subject matter jurisdiction over the case because the [Association] failed to join [Ex-Wife] as an indispensable party with respect to its claim for assessments?

[2]. Whether the trial court erred in awarding the [Association] damages for assessments when the settlement agreement with [Ex-Wife] reduced the amount recoverable from [Unit Owner]?

[3]. Whether the trial court erred in awarding damages for assessments and attorney's fees when the [Association] failed to meet its burden of proof under the [D]eclaration[] and failed to adduce any evidence to establish that the expenditures of the [Association] exceeded the amount of assessments collected on all the lots during any of the relevant fiscal years?

[4]. Whether the trial court erred in awarding the [Association] attorney's fees when the [Association] failed to submit sufficient evidence to establish that the hourly rate and total amount of the fees were reasonable, and the trial court substituted its own personal judgement in disregard of the incompetent evidence of record?

[5]. Whether the trial court erred in failing to grant judgment in favor of [Unit Owner] on his claim for defense and indemnification?

---

supported by competent evidence in the record. Accordingly, the trial court's authority to grant or deny a post-trial motion following a bench trial is enhanced, and the appellate court's authority to override the trial court's decision is proportionately diminished. A new trial may be granted only when the verdict is so contrary to the evidence as to shock one's sense of justice.

*Merrell v. Chartiers Valley School District*, 51 A.3d 286, 293–94 (Pa. Cmwlth. 2012) (internal citations and quotation marks omitted). On questions of law, our standard of review is *de novo* and our scope of review is plenary. *Mazur v. Trinity Area School District*, 961 A.2d 96, 101 (Pa. 2008).

Unit Owner Brief at 2-3 (capitalization and boldface omitted).[11]

## Analysis

## I. Indispensable Party

Unit Owner argues that the trial court lacked subject matter jurisdiction because the Association did not name Ex-Wife as a defendant to Count II of the Association's second amended complaint. *See* Pa.R.Civ.P. 2227(a). Unit Owner contends that Ex-Wife was an indispensable party because she had joint liability for the assessments in question because they were marital debt. Citing *Baldwin v. Ely*, 193 A. 299 (Pa. Super. 1937), Unit Owner contends that all parties with joint liability must be named as defendants. Unit Owner contends that the Settlement Agreement between the Association and Ex-Wife had no bearing on the Association's obligation to name Ex-Wife as a defendant in its assessment collection action.

The Association responds that Unit Owner did not raise the indispensable party issue before the trial court. It concedes, however, that to the extent the issue implicates subject matter jurisdiction, it cannot be waived. The Association claims that even if Ex-Wife were an indispensable party by reason of Pa.R.Civ.P. 2227(b),[12] Unit Owner is not entitled to relief. First, Unit Owner joined her "as an additional defendant" at "an early stage in the case." Association Brief at 26. Second, Ex-Wife did not own the lots with Unit Owner as tenants by the entireties. Third, under Pa.R.Civ.P. 2229(d),[13] the Association had no obligation to

---

[11] Unit Owner's fifth issue is waived because he did not address it in his brief. Indeed, Unit Owner agrees, noting that the fifth issue "was an artifact from a draft . . . that should have been deleted." Unit Owner Reply Brief at 1, n.1.

[12] Rule 2227(b) provides: "If a person who must be joined as a plaintiff refuses to join, he or she shall, in a proper case, be made a defendant or an involuntary plaintiff when the substantive law permits such involuntary joinder." Pa.R.Civ.P. 2227(b).

[13] Rule 2229(d) states:

name Ex-Wife as a defendant because the lots were titled to Unit Owner. Fourth, the Association rejects the precedent cited by Unit Owner as treating a liability incurred by a spouse during marriage as marital debt. *Id.* at 28-29. In any case, the Association argues that disposition of any marital debt belonged in the divorce proceeding.

In his reply brief, Unit Owner argues that Rule 2227(b) applies only where the indispensable party has refused to join a civil action as plaintiff or defendant. No such evidence exists here. Simply, the Association was obligated to name Ex-Wife as a defendant, and this obligation was not negated by Unit Owner's action to seek "contribution and/or indemnity" from Ex-Wife. Unit Owner Reply Brief at 8. Unit Owner further argues that the Association misapprehends the significance of Rule 2229(d). It provides that "where the liability of any defendant is solely joint, *the plaintiff shall join all other persons jointly liable* with such defendant." Pa.R.Civ.P. 2229(d) (emphasis added). The debt for assessments was jointly borne by Unit Owner and Ex-Wife. The Declaration makes transferees of lots jointly and severally liable for unpaid assessments. However, Unit Owner and Ex-Wife were joint owners of 12 lots, which were marital property at the relevant period of time.

The Pennsylvania Rules of Civil Procedure address joinder of parties, which can be compulsory or permissive. On the former, they state as follows:

> A plaintiff who asserts a cause of action ex contractu may join as defendants all or any one or more persons alleged to be liable to the plaintiff on or by reason of the breach of the contractual obligation sued upon, regardless of the capacities in which such persons are respectively liable or whether they are primarily or secondarily liable or whether their liabilities arise from the same or separate acts or undertakings; but where the liability of any defendant is *solely joint*, the plaintiff shall join all other persons jointly liable with such defendant.

Pa.R.Civ.P. 2229(d) (emphasis added).

11

**Rule 2227. Compulsory Joinder**

(a) Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants.

(b) If a person who must be joined as a plaintiff refuses to join, he or she shall, in a proper case, be made a defendant or an involuntary plaintiff when the substantive law permits such involuntary joinder.

Pa.R.Civ.P. 2227. Rule 2227(a) requires dismissal of an action where there has been no timely attempt to join a necessary party as a defendant. *Commonwealth v. Buhler* (Pa. Cmwlth., No. 1322 C.D. 2018, filed July 10, 2019).[14] Because the failure to join an indispensable party to a lawsuit deprives the court of subject matter jurisdiction, the issue may be raised at any time. *Corman v. National Collegiate Athletic Association*, 74 A.3d 1149, 1162 (Pa. Cmwlth. 2013). *See also* Pa.R.Civ.P. 1032 (a party may waive defenses not raised by preliminary objection, answer or reply, but specifically excepts the defense of failure to join an indispensable party). Whether a court has subject matter jurisdiction presents a question of law, making our standard of review *de novo* and the scope of review plenary. *Mazur*, 961 A.2d at 101.

"[A]n indispensable party is one whose rights are so directly connected with and affected by litigation that he must be a party of record to protect such rights, and his absence renders any order or decree of court null and void for want of jurisdiction." *Columbia Gas Transmission Corporation v. Diamond Fuel Company*, 346 A.2d 788, 789 (Pa. 1975). "A party against whom no redress is sought, or whose rights would not be prejudiced by a decision in the case, is not indispensable."

---

[14] Pursuant to Commonwealth Court Internal Operating Procedure §414(a), 210 Pa. Code §69.414(a), an unreported opinion of this Court may be cited for its persuasive value and not as binding precedent.

12

*Guthrie Clinic, Ltd. v. Meyer,* 638 A.2d 400, 405 (Pa. Cmwlth. 1994). Whether a party is indispensable requires an examination of the following four factors:

> 1. Do absent parties have a right or interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of the issue?
>
> 4. Can justice be afforded without violating the due process rights of absent parties?

*HYK Construction Company, Inc., v. Smithfield Township*, 8 A.3d 1009, 1015 (Pa. Cmwlth. 2010) (quoting *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 581 n.11 (Pa. 2003)). In this inquiry, courts must consider not only the nature of the claim and the relief sought, *id.*, but also "whether justice can be done in the absence of a third party." *Pennsylvania State Education Association ex rel. Wilson v. Department of Community and Economic Development*, 50 A.3d 1263, 1267 (Pa. 2012). In *Hartley v. Langkamp*, 90 A. 402 (Pa. 1914), our Supreme Court explained that a party is indispensable "when he has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience." *Id.* at 403–04 (citation omitted).

Unit Owner relies on *Baldwin*, 193 A. 299. There, the Superior Court addressed the issue of whether a creditor could maintain an action against one joint obligor for his share of a debt after settling with and releasing the other two joint obligors. The Superior Court affirmed the lower court's judgment dismissing the action. *Id.* at 302. It held that under common law, all joint obligors must be joined as defendants in a single action unless a statute provides otherwise. *Id.* at 301-02. The court further explained that a release of one joint obligor does not discharge the

others, as such a release is construed merely as a covenant not to sue.[15] *Id.* at 301. However, that release did not relieve the creditor from the procedural requirement of naming all the debtors because the obligation was joint rather than several. *Id.* at 302.

Upon review of the entire record, we are constrained to agree with Unit Owner that Ex-Wife was an indispensable party to the Association's second amended complaint. We reach this conclusion notwithstanding the fact that the lots were titled solely in Unit Owner's name until Ex-Wife obtained title to six of them in the divorce proceedings.[16] Likewise, her settlement with the Association on those Six Lots is not dispositive on the question of jurisdiction. The lots in question constituted

_____

[15] The Superior Court reasoned:

> While our Pennsylvania cases hold that an unreleased obligor is entitled to a credit for the proportionate share or shares of those released, they do not go so far as to state that a suit may be brought against one without the joinder of the other. As the nature of a joint obligation, as it existed under the common law, has been so modified as to permit a release of the joint obligors, it may seem, at first blush, from a practical standpoint, *unreasonable and useless to require suit to be brought by a plaintiff against those who, under his averments, are not indebted to him.* But we must not lose sight of the fact that we are dealing with what is fundamentally a *single joint obligation of three parties. By their contract they agreed they should be joined and sued as one principal.* A release may discharge one of liability to pay anything further, but *it does not relieve him of the duty of answering jointly with the others for the entire obligation in a single suit.* Those released may have given no consideration or only a nominal one. One who is legally united with the others in a joint obligation should, in all fairness, be given information of the amount that was paid and the nature of the release and all of the circumstances connected therewith. It would seem unconscionable and inequitable to demand the full one–third of the joint obligation and relieve the other two by paying a trifling amount.

*Baldwin*, 193 A. at 302 (emphasis added).

[16] In light of the disposition of this appeal, we need not decide whether, and to what extent, if at all, the lots were owned by the parties as tenants by the entireties on account that they were acquired during their marriage. *See Constitution Bank v. Olson*, 620 A.2d 1146, 1151 (Pa. Super. 1993) ("[T]he legal unity of time, title, interest, possession and marriage create a tenancy by the entireties[.]").

14

marital property from the moment they were acquired during their marriage. *See* 23 Pa. C.S. §3501 (providing that marital property is "all property acquired by either party during the marriage and the increase in value of any nonmarital property . . . ."). *See also Fratangelo v. Fratangelo*, 520 A.2d 1195, 1201 (Pa. Super. 1987) (noting that "matrimonial property is not equivalent to the creation of entireties property, which requires that the property be acquired in joint names of husband and wife"). However, it was not necessary for the lots in question to be titled to Unit Owner and Ex-Wife as tenants by the entirety in order for Ex-Wife to be an indispensable party. Central to the jurisdictional analysis is the indisputable fact that any liability incurred on the lots constituted marital debt. *Goodwin v. Goodwin*, 244 A.3d 453, 462 (Pa. Super. 2020) (citations omitted) (emphasis added) (noting that courts in Pennsylvania "have long held debts incurred during marriage are marital debt, *regardless* of which party incurred them").

Ex-Wife initially held only an equitable marital interest in the lots until she obtained title to the Six Lots during the divorce proceedings. However, she was liable for 25% of any damages arising from the Association's action against Unit Owner for non-payment of assessments alleged to be owed on the 12 unsold lots titled to Unit Owner for years 2004, 2006, 2007, and 2009. As a result of the 2012 equitable distribution of marital property, Ex-Wife's liability for the allegedly unpaid assessments was set at 25%. Under the Pennsylvania Rules of Civil Procedure, "where the liability of any defendant is *solely joint*," the plaintiff must name the other jointly liable defendants. Pa.R.Civ.P. 2229(d). *See also* Pa.R.Civ.P. 2227(a) ("Persons having only a *joint interest* in the subject matter of an action must be joined on the same side as plaintiffs or defendants.") (emphasis added). Under

15

*Baldwin*, 193 A. at 302, even where one obligor is released from further payment, it must "answer[] jointly" with the others.

Here, regardless of whether Ex-Wife can be considered an "Owner" before 2012, she became jointly liable for the assessment liability on the lots titled to Unit Owner upon the distribution of marital assets. This fact is underscored by the Association's settlement with Ex-Wife. At a minimum, this settlement evidences the Association's knowledge that she had rights and obligations with respect to the assessments in question.

The Association cannot recover damages against Unit Owner without prejudicing Ex-Wife, whose liability for damages was quantified at 25%.[17] The trial court, therefore, erred in holding that Ex-Wife was not an indispensable party.

### Conclusion

Because Ex-Wife was an indispensable party in the Association's claim for damages under Count II, the trial court lacked subject matter jurisdiction to enter judgment in favor of or against any party. Rather than entering judgment, the proper remedy was to dismiss the Association's second amended complaint. *See* Pa.R.Civ.P. 1032(b) (providing that when a court lacks subject matter jurisdiction, and it is not possible to transfer the action to a court which has jurisdiction, "it shall dismiss the action"). Accordingly, the trial court's judgment is vacated, and the matter is remanded with instructions to the trial court to enter an order dismissing

---

[17] Unit Owner's filing of a third-party complaint to bring Ex-Wife into the action as a third-party defendant under Pa.R.Civ.P. 2252 did not cure the Association's failure to join Ex-Wife as an indispensable party. Because joinder of an indispensable party is jurisdictional, it cannot be accomplished through impleader, which necessarily presupposes an action over which a court may exercise subject matter jurisdiction. Moreover, allowing jurisdiction to be established via impleader and without a joinder would create prejudice to the indispensable party.

16

Count II of the Association's second amended complaint.[18]  The Association's application to strike is granted in part and denied in part.

_____
MARY HANNAH LEAVITT, President Judge Emerita

_____

[18] Because of our conclusion, we do not address Unit Owner's other issues on appeal. He challenges the damages award as unfounded because the amount of the alleged unpaid assessments was not calculated in accordance with the Declaration, and there was no finding that the Association had an operating deficit during the years in question. Further, the damages were excessive because they did not account for the amount Ex-Wife paid in her settlement with the Association or Unit Owner's in-kind contribution to the Association's operating expenses for the years in question. Likewise, we do not address Unit Owner's challenge to the trial court's award of attorney's fees, based on an hourly rate of $505, on grounds that the Association did not have a written fee agreement with its counsel; did not present an expert report in support of either the hourly rate or hours expended by counsel; and the trial court relied on its knowledge and expertise in lieu of record evidence on reasonable attorney fees.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The Enclave Community Services Association, Inc. and The Borough of Fox Chapel | : : : : | **CASES CONSOLIDATED** |
| v. | : : | |
| James R. Katz, d/b/a Pittsburgh Land Company | : : : | |
| v. | : : | |
| Susan Katz | : : | |
| James R. Katz, d/b/a Pittsburgh Land Company | : : : | |
| v. | : : | |
| The Enclave Community Services Association, Inc., a Pennsylvania nonprofit corporation, Jay W. Cleveland, Jr., Francis W. Daily, Mary Winston, Avrum Levicoff, Esquire, and Iyer Vish | : : : : : : : | |
| Appeal of: James R. Katz, d/b/a Pittsburgh Land Company | : : | Nos. 924 and 1383 C.D. 2023 |

# **O R D E R**

AND NOW, this 22nd day of January, 2026, the judgment of the Court of Common Pleas of Allegheny County, dated April 19, 2023, is hereby VACATED and the matter is REMANDED to the trial court to enter an order dismissing Count II of the second amended complaint filed by The Enclave Community Services Association, Inc. The Enclave Community Services Association, Inc.'s application

to strike, filed on February 14, 2025, is GRANTED in part and DENIED in part, and exhibits A and B attached to James R. Katz, d/b/a Pittsburgh Land Company's reply brief are hereby STRICKEN.

Jurisdiction relinquished.

_____

MARY HANNAH LEAVITT, President Judge Emerita